**JONES v. PENNSYLVANIA R. CO.**
**Civil Action No. 880.**

District Court, E. D. New York.
Dec. 9, 1940.

Stephen A. Machcinski, of New York City (William Paul Allen of New York City, of counsel), for plaintiff.

Burlingham, Veeder, Clark & Hupper, of New York City (G. Hunter Merritt, of New York City, of counsel), for defendant.

BYERS, District Judge.

Motions were made to set aside plaintiff's verdict upon the usual grounds, and for a directed verdict for defendant, as to both of which decision was reserved, on November 1, 1940.

The motion will be granted to set aside, and a new trial will be ordered, because I am satisfied that justice so requires. The assertion of negligence made in the complaint and the bill of particulars is that the defendant's tender attached to engine 93 was carelessly and negligently overloaded on the date of plaintiff's injury, December 4, 1939.

That the plaintiff, who was a fireman attached to that engine, was negligently ordered to trim the coal on the tender when the defendant knew that it was dangerous and unsafe for him to do so; that the defendant failed to give him any warning of the dangerous and unsafe condition so created, and that it failed to give him a safe place to work. That the defendant's negligence was the sole cause of plaintiff's injury.

As amplified by the bill of particulars, these charges are that the overloading created a dangerous condition and that, as the plaintiff began to trim the coal, it moved, tilted and shifted, and he fell off the tender and was injured, because he was unable to obtain a firm foothold. And that the defendant failed to give him warning of the said unsafe condition.

Thus the plaintiff's theory of his cause was plainly and unmistakably announced, and upon it the case went to trial.

The plaintiff's own testimony on cross-examination completely repudiated the assertion of overloading, thus:

"Q. There was enough room for the coal you had on the tender? A. Plenty of room."

By the time this testimony appeared, the plaintiff's case had gone in on a wholly different theory, and if the court had been alert to grasp the full significance of the alteration in theory, which unfortunately he was not, appropriate action would have been taken to send the case back to the calendar at that time.

This engine and the tender were taken over at about 11 a.m. by Miller, the engineman, and Jones, the fireman, at or near the ash-pit in the defendant's freight yard at Columbia (about 28 miles from Harrisburg, Pennsylvania), on the day in question.

A hostler had not been on duty from 10 o'clock that morning, for some reason which does not appear. It would have been for him to see that coal, sand, water, etc., were supplied so that the engine should be ready for service at 12 noon. The fact was that the tender had but a half supply of coal, and hence the engine crew had to attend to the deficiency. At about 11:15 a.m. they boarded the engine, which was then moved forward to the overhead structure whence three loads of coal were dumped into the tender by the engine preparer Thomas, whose task that was.

The only important question in the case is as to how that was done; whether all in one place in the tender, creating a peak that was excessively high; or in three places, about 2 feet or so apart, creating three cones or peaks which would be only moderately above the sides of the tender.

The plaintiff testified to the former process, the dumping in "the same spot", so that as to the pile of coal so created "I would say it was around 6 to 8 feet" *above the sides of the tender.*

The testimony of Miller and Thomas was to the contrary, namely, that the engine was backed between the first and second, and the second and third dumpings, so that three customary cone-shaped piles resulted.

Apparently the jury accepted the plaintiff's version and, if all available evidence had been submitted to them, there would be difficulty in disturbing the verdict solely because of a different estimate of the evidence on the part of the court.

But all available evidence was not submitted; nor could the necessity for producing it be forecast from the pleadings: The height of the so-called coal "wharf" on its under side, above the sides of the tender, would greatly influence, if not determine, the question of whether it was pos-

sible for such a pile as the plaintiff describes to have been created on the tender.

That was a physical fact which would result from measuring a vertical line drawn from the plane established by the top of the sides of the tender, to the horizontal plane containing the lowest point of the structure of the coal wharf.

As to that, the defendant's attorney was without data (see p. 38) for he was asked the distance from the top of the engine cab to the girder supporting the coal "wharf" and could not state.

Miller and Thomas stated the latter figure to be from 12 to 14 inches, but the height of the top of the cab, if projected over this part of the tender above the sides of the latter, nowhere appears. Nor does the *precise* clearance between the top of the cab and the under side of the coal loading structure.

If it be that the missing dimension was too restricted to admit of the dumping in one spot, the plaintiff's testimony as to the failure to move the engine between the dumpings would be so greatly impaired as to become unacceptable. If the dimension was sufficient to vindicate the plaintiff's recital, he should have the benefit of that showing.

The point is of great importance to the case, for if the dumping was done at three intervals of space, then the usual custom of the yard was followed, and even the revised version of negligence could not be supported; if that was the actual state of affairs, the plaintiff would be held to have assumed the open and obvious risks of his calling, there being an absence of negligence on the part of his employer.

The plaintiff's failure to comply with Rule 1133 seems to be inconsistent with his testimony as to the true conformation of the completed load of coal as he viewed it.

"Rule 1133. Except in electrified territory, when necessary to go over tender in motion climb over center of coal pile if necessary. Look for overhead obstructions or structures and avoid coming in contact with them. When engine is standing use ladder on rear of tender instead of climbing over coal pile. Going over or on top of tender in motion or standing is prohibited in electrified territory." (This yard was not in electrified territory.)

The plaintiff's approach to the load was over the front gate of the tender. Had the pile been as high as he described, it is at least a fair inference (the engine not being in motion) that he would have climbed on it from the rear of the tender, having first mounted the ladder at that place, because his platform of access would have been so much nearer the peak of the pile.

The plaintiff's statement to the defendant's claim representative, dated fifteen days after the accident (and of course prior to the bringing of suit), made no mention of coal sliding down, striking him, and causing him to fall over the side of the tender to the ground.

He did say that he did not know whether his foot slipped from the coal, or a piece he was standing on turned, throwing him over the side of the tank.

Thus the theory of his being the victim of sliding coal was not of contemporary origin; it seems to have developed as an incident to litigation. If there were three piles of coal, there was no sliding from one which was excessively high, and his place to work would seem to have been of customary safety such as was familiar to him in his years of experience.

Mention should be made of the allegation in the complaint that there was no warning given to the plaintiff of the dangerous condition caused by overloading.

The plaintiff testified that he observed the entire process of the loading, and as it was conducted in daylight and he did not assert that any hidden condition was created that he did not see, or that he complained of any unusual or high peak of coal in which he would be required to do the trimming; thus the failure to warn disappeared from the case.

Upon a new trial the defendant can produce all actual dimensions requisite to demonstrate whether it was physically possible to dump at one place three loads of coal into a tender that was already half full, so as to create a peak 6 to 8 feet above the sides of the tender. That silent evidence is thought to be necessary to the proper presentation of the case to the jury, in the interests of truth.

The verdict, which in any case was excessive, will be set aside, and a new trial ordered.

Settle order.