Robert RUIZ, Plaintiff,

v.

HAMBURG–AMERICAN LINE, a corpo-
ration, et al., Defendant-Third-Party
Plaintiff-Appellant,

v.

JONES STEVEDORING COMPANY,
Third-Party Defendant-Appellee.

No. 71–1247.

United States Court of Appeals,
Ninth Circuit.

April 23, 1973.

Francis L. Tetreault (argued), Wil-
liam E. Kane, Paul A. Dezurick, Graham
& James, San Francisco, Cal., for appel-
lant.

Robert Sikes (argued), Sikes, Pinney
& Matthew, North Hollywood, Cal., for
appellee.

Before WRIGHT, KILKENNY, and
CHOY, Circuit Judges.

**EUGENE A. WRIGHT, Circuit Judge:**

This was a typical three-party suit arising from an injury to a longshoreman. Ruiz, employed by Jones Stevedoring (Jones), was injured while working on a vessel, the M.V. Koln, owned by Hamburg-American (Hamburg). As a *Sieracki*[1] seaman, Ruiz sued Hamburg, alleging unseaworthiness of the vessel. Hamburg brought a third-party action seeking indemnity from Jones, alleging (1) that Jones breached his *Ryan*[2] warranty of workmanlike performance, and (2) that Jones was obligated under an express contractual provision to hold Hamburg harmless against any claim for personal injury arising out of Jones' work on the vessel.

The two actions were tried together. Ruiz was awarded a favorable verdict, and has since settled his claim against Hamburg. His claim is not before this court. The indemnity action resulted in a jury verdict against Hamburg.

The Hamburg-Jones contract provided indemnity to the shipowner for claims arising from injuries to longshoremen, other than those due to the "sole fault" of Hamburg.[3] Hamburg attempted to prove fault or negligence of Jones as the cause of the accident and its evidence was substantial.[4]

On the final afternoon of a ten-day trial, Jones introduced its defense theory. With circumstantial evidence it attempted to show that members of the ship's crew had removed a safety device and that this was the sole cause of the injury to Ruiz.

Ruiz, a member of the longshore gang working around Hatch Number 3, was injured when the hatch cover fell on him. It had been stored vertically and had to be lowered and pulled over the empty hatch with a cable. The leading edge fell on Ruiz as he stood on the hatch coaming trying to locate the end of the cable which he was to fasten to the cover.

Jones' witnesses, produced at the end of the trial, provided some evidence that members of the ship's crew were near Hatch 3 from 30 to 45 minutes before the accident and that the longshoremen had not worked at that hatch from 5:30 p. m. to 6:45 p. m. The accident occurred shortly after 6:45 p. m.

Schoder, a superintendent for Jones, testified to a conversation with the ship's chief officer about 5:45 p. m. The mate had asked if the ship's crew could close Hatch 3, and Schoder firmly refused permission, as long as there were longshoremen aboard the vessel.

1. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

2. Ryan v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

3. The contract between Hamburg and Jones included the following clause:
   The stevedoring company agrees to indemnify and hold harmless the steamship company against any claim or action whatever, which may be made or brought by an employee of the stevedoring company, or any other person or persons, for personal injury or death sustained on or around the company's vessels arising out of the work of the stevedoring company, excepting where such injury or death is caused solely by the fault of the ship's officers, crew, or equipment.

4. Hamburg claimed Jones was at fault in four respects: (1) in failing to properly inspect the work area; (2) in failing to instruct its longshoremen on the proper operation of the hatch in question; (3) in using an improper work method in closing the hatch; and (4) in failing to close the hatch before commencing to wing in a shoreside boom.

   Hamburg's presentation was highly persuasive. The evidence was undisputed that the longshore gang of which Ruiz was a member was unaware of the type of hatch cover on the No. 3 hatch. The gang boss, Harrison, and the other longshoremen testified that they were operating under the impression that the hatch cover had a leading full lid instead of the leading half that it actually had. Further, it was uncontroverted that Jones had failed to instruct its crew on the proper way to close a hatch with a leading half lid. It was also undisputed that the gang boss did not inspect the working area of the No. 3 hatch prior to attempting to close the hatch.

Schoder added that the mate then spoke in German to a junior officer who went in the direction of the ship.

On the night of the accident, said Schoder, the ship's officers and crew "were very anxious to sail" to avoid possible fog conditions. Another longshoreman testified that, when he left the hatch area at 5:30 p. m., some 3½ feet of cable was hanging from the winch platform in the direction of the hatch. Ruiz and others added that, when they arrived later, the cable was hanging much lower and into the hatch opening.

After all parties had rested and before oral argument, counsel for Hamburg moved to reopen and for a continuance, in order that he might bring from Germany to testify crew members who had been aboard the ship on the day of the accident. Counsel claimed surprise because he had been misled by answers to interrogatories which indicated that Jones did not contend that crew members had handled any ship's gear at Hatch 3. The motions were denied and the trial was concluded with closing arguments.

In argument, counsel for Jones urged repeatedly that Hamburg had failed to call any members of the crew to refute the story of crew involvement as testified to by the longshoremen. Footnote 7 details some of the remarks.

After the adverse jury verdict, Hamburg moved for a new trial on these grounds: (a) surprise, (b) prejudicial misconduct of opposing counsel in oral argument and (c) insufficiency of the evidence to justify the verdict. The trial court denied the motion and we granted leave for it to consider Hamburg's motion under Civil Rule 60(b) for relief from judgment because of newly discovered evidence, surprise and misrepresentation by Jones.

The trial court denied this motion, finding that Hamburg had not exercised

due diligence. From this denial, Hamburg has appealed and its appeal has been consolidated under Rule 3(b) of Federal Rules of Appellate Procedure with the appeal from the denial of motions for directed verdict, judgment n.o.v. and new trial.

██ In considering motions for a continuance, new trial, and for relief of judgment under Rule 60(b), the trial court is free to exercise its discretion, and its decision will be overturned on appeal only for abuse of that discretion. In States Steamship Co. v. Philippine Airlines, 426 F.2d 803, 804 (9th Cir. 1970), we said:

> "Whether the judge misused or abused his discretion, of necessity, depends upon the facts of each case. This court has never attempted to fix guidelines, although a good rule of thumb might be to follow Judge Magruder's oft-quoted phrase in In Re Josephson, 218 F.2d 174, 182 (1st Cir. 1954), that the exercise of discretion of the trial judge should not be disturbed unless there is 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' "

## DENIAL OF CONTINUANCE

Given the obvious genuine surprise to Hamburg's counsel when Jones introduced its "crew involvement" defense on the afternoon of the last day of trial, coupled with the misleading nature of Jones' reply to interrogatory No. 22,[5] it does not seem to us that a request for a continuance was unreasonable. Had the members of this panel been in a position to exercise the discretion reposing in the trial judge, we would have granted the continuance in the interest of justice.

██ However, we cannot say that the action of the district judge was so un-

5. 22. Do you, your attorneys or your representatives have knowledge and/or information that any member of the crew of or any officer of the M. V. Koln touched, handled, or in any way worked any of the ship's gear or equipment used to raise and secure and/or lower and secure the No. 3 MacGregor hatch cover on said vessel?

A. No.

reasonable and arbitrary as to amount to an abuse of his discretion. The trial had already taken ten days, and Hamburg had rested. Further, the record shows no mention by Hamburg's counsel, in his informal request for a reopening and a continuance, of the length of time it would take to produce the German witnesses. We recognize the desire of the trial judge to conclude expeditiously an already lengthy case. The calendar congestion in the district courts is well known, and we do not wish to discourage conscientious attempts to reduce it. Under these circumstances, therefore, we are unwilling to find an abuse of discretion.

### NEW TRIAL BASED UPON SURPRISE, MISREPRESENTATION, AND PREJUDICIAL ARGUMENT BY COUNSEL FOR JONES

The trial court characterized Jones' replies to the interrogatories of Hamburg as "ambiguous" on the issue of crew involvement. Jones argues that its answer to interrogatory No. 22 was true since, at best, it had only circumstantial evidence of crew involvement. We do not find this distinction between direct and circumstantial evidence compelling. The interpretation of knowledge and information urged by Jones would substantially subvert the purposes underlying the discovery devices of the Federal Rules of Civil Procedure, i. e., "to reduce the amount of litigation, to narrow the issues and to avoid surprises and to promote justice." Dill Mfg. Co. v. Acme Air Appliance Co., Inc., 2 F.R.D. 151, 153 (E.D.N.Y.1941).

Our analysis of Jones' replies to Hamburg's interrogatories leads us to conclude that Jones misrepresented its position.[6] Thus Hamburg was justifiably surprised at trial when a new defense was offered. Some courts have gone so far as to hold that failure to

---

6. In denying the motion for relief of judgment, the trial judge placed special emphasis on Jones' answer to the following interrogatory:

5. State the names, addresses, employers and positions with same of all persons who you, your attorneys or persons acting on your behalf know or believe to have knowledge or information of the facts concerning the injury which is the subject of this action.
A. See the answer to Interrogatory No. 1 [which listed the names of 21 longshoremen and Jones' employees]. In addition, it is believed that officers, crew members, or representatives of [Hamburg] have such knowledge or information.

The trial judge concluded that this answer, coupled with Jones' reply to Interrogatory No. 9 wherein it contended that the hatch was designed, maintained, and operated by Hamburg in an unsafe manner, constituted notice to Hamburg that Jones considered the issue of crew involvement still very much alive despite its answer to Interrogatory No. 22.

In so finding, the trial court overlooked Jones' answers to the following interrogatories:

9. With respect to your allegation in your Answer and Counterclaim to Third-Party Complaint that [Hamburg] is barred from any indemnity from you by its conduct or that of its officers, employers or representatives, which was a material breach of the stevedoring contract, please set forth each and every fact upon which you base your allegation.
A. [Hamburg] provided a hatch, hatch coverings, and attendant mechanisms that were not in a condition fit for safe stevedoring of the vessel, particularly at the No. 3 hatch, in that said gear and equipment was defectively designed, maintained, and operated in an unsafe manner, in a way that was not apparent to [Jones] in the course of it's [sic] stevedoring duties.

10. Please set forth the name, address, position and employer of each and every person you, your attorneys or persons acting on your behalf know or believe to have knowledge of the facts set forth in your answer to interrogatory No. 9.
A. See those persons named in the answer to Interrogatory No. 1.

15. If you contend that the injury which is the subject of this suit was caused solely by the fault of the ship's officers, crew or equipment, please set forth each and every fact upon which you base your contention.
A. See the answer to Interrogatory No. 9.

16. Please set forth the name, address, position and employer of each and every

disclose a defense before trial warrants a new trial. *See, e. g.,* Burton v. Weyerhaeuser Timber Co., et al., 1 F.R.D. 571 (D.Ore.1941); Jones v. Pennsylvania R. Co., 35 F.Supp. 1017 (E.D.N.Y.1940).

We need not go so far in our holding that when a party in its answers to interrogatories misleads another party into believing that a defense will not be offered at trial, the later introduction of that defense will support a motion for a new trial. Misleading and evasive answers to interrogatories justify the court's viewing with suspicion the contentions of the party so answering. *See,*

*e. g.,* Alamo Theatre Co., Inc., et al. v. Loew's Inc., et al., 22 F.R.D. 42 (N.D. Ill.1958); Zielinski v. Philadelphia Piers, Inc., 139 F.Supp. 408 (E.D.Penn. 1952).

The trial court, finding the answers to the interrogatories merely ambiguous, exercised its discretion in denying the motion for a new trial. In addition to our conclusion that the answers were unequivocal and not ambiguous, we note that counsel for Jones made extensive use in closing argument of the fact that Hamburg failed to call members of the crew in rebuttal.[7]

---

person you, your attorneys or your representatives know or believe to have knowledge of the facts set forth in your answer to the preceding interrogatory.
A. See the answer to Interrogatory No. 1.·

In these answers, Jones specifically disclaimed any "knowledge or belief" that members of the ship's crew had knowledge that the injury was caused by the ship's officers, crew or equipment. These answers, and the answer to Interrogatory No. 22, are not made "ambiguous" by a general reference that crew members have "knowledge or information of the facts concerning the injury." We find instead that by its answers Jones misled Hamburg into believing that the issue of crew involvement was not involved in the suit at the time of the interrogatories.

7. We quote at some length portions of counsel's closing argument:
\* \* \* \* \*

"Anyway, another clue in this is when a party in the trial does not bring in evidence to counter something that is going to come against them. You know, as reasonable people you can certainly infer that, well, either they didn't have the evidence to bring in or it was not good evidence.

"Now that is a reasonable assumption. All of us are attorneys and supposed to be knowing what we are doing.
\* \* \* \* \*

"But now, let's go even a step further: When you don't have eye witnesses, you have *something* that can be called physical evidence, or it can be called circumstantial evidence. It has all kinds of names, the loudest and strongest evidence in this entire case from my client Jones Stevedoring Company is silence. Silence on the part of the ship owner.

"Now picture this: This case has been going on for almost two years. This ship owner, the HAMBURG AMERICAN LINE, secured the services of Graham and James. They are sued. Let's just see what their frame of mind might be back in March of 1968. They are sued for a quarter of a million dollars, and they have hatch logs, they obtain them from us, hatch logs as to what went on here.

"As soon as they looked at the hatch logs, any reasonable lawyer or any reasonable office or the HAMBURG AMERICAN LINE themselves would have said immediately, 'There is a gap here. These longshoremen were not at that place between 5:30 and 6:45. What did go on at this crucial time? We have got to show that our ship's crew was not there, so let's contact the offices immediately, the ship's crew, run them down, talk to them, find out what happened at that Hatch No. 3. Let's take their positions if they are not here, let's get them in here and show that we were not there.

"We have got $250,000 at stake here. Better, yet, we have so many ships coming in here all the time with all these names—just have them come over here, just have one of them, even, the Chief Officer. The expenses wouldn't make any difference with this type of a lawsuit.

"So who appears for the ship owner here to testify? 'Yes, I was the mate on duty. I was the boatswain. I was in charge of the deck crew of the vessel. My men did not work the No. 3 and were not up there between 5:30 and 6:45—and my record is proven.'

"Who is here to say that? Silence.

"Now it seems logical that if you are defending the case, you would have

Counsel even went so far as to intimate, falsely, that prior to the trial Hamburg was aware of the testimony one of Jones' key witnesses would give. Although generally comment on the failure to call available rebuttal witnesses is proper, under these circumstances, in light of Jones' misrepresentation in the answers to interrogatories and its incorrect intimation, as noted above, we are convinced that the judgment cannot stand.

The Supreme Court has said that discretion "[w]hen invoked as a guide to judicial action . . . means a sound discretion . . . exercised . . . with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931). We are not bound to stay our hand and place our stamp of approval on a result which we deem unjust. Commercial Credit Corp. v. Pepper, et al., 187 F.2d 71 (5th Cir. 1951).

Accordingly, we conclude that the combination of all the errors below,

when considered in light of the exceedingly thin evidence in support of the verdict, dictates a conclusion that the trial court abused its discretion in denying the motion for a new trial. We cannot escape the "definite and firm conviction that the court below committed a clear error of judgment."

The judgment is reversed and the case remanded for a new trial. We deny Hamburg's request that we direct a verdict in its favor, since we are not convinced that "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." Brady v. Southern R. R., 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

Reversed.

KILKENNY, Circuit Judge (dissenting):

Inasmuch as I do not have a definite and firm conviction that the trial judge committed a clear error of judgment in the conclusions which he reached, I would hold that he did not abuse his discretion and would affirm the judgment.

---

somebody here. That is the way it appears to me. That is the way I would be defending it, that is either good or bad, but there is silence.

"Who appeared here to say, 'Well, we were not in a hurry to get away by 7:00 o'clock p. m. We had no reason to. The fog was not coming in. We had no reason to get that hatch closed as soon as possible.' Who came in and said that? Silence.

\* \* \* \* \*

"Now why wouldn't you bring in somebody? As a lawyer, there are only two reasons why, maybe there is only one. If you bring him in, the truth is going to come out—we don't want him in here, and did you notice that in the record here, in the evidence in this trial, which is all any of us can consider, nowhere has there ever been any excuse in the record made at all why these men were not here. Nothing has been said that they all died or they are all in prison—nothing.

"Now, one other thing, it is sort of like the first reason, 'I just hate to submit him to cross-examination.'

"Now all our men were in here, you noticed that. He picks out some little thing here and some little thing there that does not fit exactly, some of the longshoremen see things a little differently. If they were all telling precisely the same story you better watch out for this type of thing, but we had them all here, everybody could talk to them, examine them. But I would have loved to have started in on the ship's officer—but I didn't have any chance. Why? They were not here.

"Had they been in California or somewhere and I had subpoenaed them, they would be here—but they are not.

"Owning all of the ships, that list that he went through, I am sure that HAMBURG AMERICAN could have had at least one of their mates here to testify. The silence is deafening and you are reasonable people and practical people as to what really goes on in these things."