ALASKA AIRLINES, INC., Appellant,

v.

Milford Douglas SWEAT and Diane M. Sweat, Appellees.

Milford Douglas SWEAT and Diane M. Sweat, Cross-Appellants,

v.

ALASKA AIRLINES, INC., Cross-Appellee.

Nos. 3705, 3706.

Supreme Court of Alaska.

Sept. 15, 1978.

Sanford M. Gibbs, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for appellant and cross-appellee.

Kenneth D. Jensen, Jeffrey H. Roth, Jensen, Harris & Roth, Anchorage, for appellees and cross-appellants.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

This appeal and cross-appeal is before us following the superior court's action pursuant to our remand in *Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916 (Alaska 1977) (hereinafter *"Sweat I"*).

In the original action in this case, Milford Douglas Sweat and his wife, Diane M. Sweat, sued Alaska Airlines, Inc., (hereinafter "Alaska") for damages for injuries sustained by Mr. Sweat in an airplane crash

near Cordova, Alaska.[1] Judgment was entered against Alaska, and both sides appealed.[2]

In *Sweat I,* liability of Alaska for the Sweats' injuries was sustained, but the case was remanded on the issues of damages and attorney's fees. The following questions are presented for our review:

1. Did the superior court exceed the scope of the mandate in *Sweat I* by including pre-trial pension contributions in its calculation of lost pension benefits?

2. Did the superior court err in admitting testimony of Walter Steige regarding draftsman health and welfare benefits and retirement contributions, in light of the hearsay rule?

3. Did the superior court err by disregarding Sweat's future increased earnings as a draftsman in computing employer contributions to Sweat's draftsman pension?

4. Did the superior court err in awarding attorney's fees?

We shall discuss the points on appeal in that order.

### PRE–TRIAL PENSION BENEFITS

One of the major disputes in *Sweat I* concerned the application of the principles of *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967), to Sweat's loss of pension benefits.[3] Sweat's injuries forced termination of his employment as a lineman with the International Brotherhood of Electrical Workers (hereinafter "I.B.E.W."), and he secured alternative employment as a draftsman with Crews, McInnes & Hoffman (hereinafter "C.M.&H.").[4] The trial court looked at the amount of benefits available to Sweat under the alternative employment, subtracted that from the benefits available under the former employment and awarded the difference.[5] We found the award to be in error, in that Sweat was given not only the present use of funds which would ordinarily be contributed over many years, but also the increases attributable to the earnings of those funds from investment. Sweat would have been eligible for retirement from the I.B.E.W. 30.7 years from the date of trial,[6] and the value of the benefits to be received at the end of that time period would include not only the employer contributions to the plan, but also the investment earnings of the fund over the years.

Accordingly, we held it necessary either to reduce both former and alternative employment benefits to present cash value, or to utilize the difference between only the employer contributions to the pension funds.[7] No enhancement for increases due to investment was to be included. The superior court elected to use the latter alternative.

In recomputing lost pension benefits, the superior court considered I.B.E.W. contributions totalling $7,229.39 for the period after the accident but before the trial. Alaska objected to the addition of this amount to lost contributions, arguing that its inclusion exceeded the scope of the mandate in *Sweat I.*[8]

---

1. *Alaska Airlines, Inc. v. Sweat,* 568 P.2d at 921–22. Ms. Sweat sued for impairment of the marital relationship.

2. *Id.* at 921. The facts underlying this dispute were set forth fully in *Sweat I* and need not be repeated here.

3. In *Beaulieu,* we held that a lump sum award for future lost earnings need not be reduced to present worth, in part, because of inflationary factors. 434 P.2d at 671. In *Sweat I,* we held that increases in wages attributable to inflationary factors which are not normally included in calculations of future lost earnings justified continued application of *Beaulieu.* 568 P.2d at 933.

4. 568 P.2d at 924.

5. *Id.* at 933–34.

6. *Id.*

7. *Id.* Both alternatives were based on the reasoning in *Beaulieu* that the court should not reduce to present value where the earning power of the funds awarded is likely to be reduced by inflation.

8. The court based its original award for lost pension benefits on the amounts receivable at maturity. 568 P.2d at 933–34. Apparently, no finding was made on the matter of pre-trial contributions by I.B.E.W. On remand, the court stated:

    It appears to me that something that should have been handled by me during the trial

■ It is well-established that a trial court is without authority to depart from the terms of an appellate mandate. *State v. Kaatz,* 572 P.2d 775, 778–79 (Alaska 1977).[9] Alaska argues that the superior court exceeded the mandate of *Sweat I* by awarding $7,229.39 for post-accident/pre-trial contributions made by I.B.E.W. for Sweat's retirement benefits since the Sweats did not request, obtain or appeal from the denial of this amount in *Sweat I.* Alaska also argues that the opinion's treatment of future retirement benefits [10] places post-accident/pre-trial benefits outside the scope of the mandate. Alaska does note the existence of an evidentiary basis for the award.

The Sweats argue that the mandate implicitly permits the inclusion of post-accident/pre-trial contributions by allowing lost benefits to be fixed by the difference in contributions between I.B.E.W. and C.M.&H.

We agree with the Sweats. While it is true that in *Sweat I* we referred to "the differences between the contributions which would be made over the 30.7 years . . .," [11] our ultimate holding contained no reference to a time period. We merely stated that "benefits should be based on the difference in the amount of contributions to the respective funds that would have been received . . .." [12] We also noted that "additional testimony" could be received to apply the formula.[13] Thus, it follows, *a fortiori,* that prior evidence could be considered.

In addition, it seems logical that, since an award based on the benefits to be received necessarily did not require an examination of the contributions or when they were made,[14] the Sweats had no reason to raise the point in *Sweat I.* Accordingly, this court did not have before it the post-accident/pre-trial distinction regarding contributions [15] and could not have included it in the mandate.

We hold that the superior court did not err in considering the post-accident/pre-trial I.B.E.W. contributions in computing lost pension benefits.

## TESTIMONY OF WALTER STEIGE

At the remand hearing, Walter Steige, general administrative manager of C.M. &H., testified regarding retirement contributions made on Sweat's behalf by C.M. &H., his new employer. His testimony may be summarized as follows:

| Wage | Annual Contribution | Period | Total |
|---|---|---|---|
| $ 8.65/hr. | $1,082.87 | 5 yrs. | $ 5,414.35 |
| $12.00/hr. | $1,742.72 | 25.7 yrs. | $44,787.90 |
| | | | $50,202.25 |

The Sweats objected to Steige's testimony as violative of the hearsay rule. The following exchange occurred between counsel for Alaska and the court:

MR. HAGANS: Your Honor, this is the type of information that's customarily outside the hearsay rule because it's just based upon a—statistics and figures that people customarily rely on in their busi-

wasn't handled, that wasn't appealed. That's just what it looks like.
The figure of $7,229.39 was based on testimony in *Sweat I.*

9. *See also, Vetter v. Wagner,* 576 P.2d 979, 980–81 (Alaska 1978); *State v. Salinas,* 362 P.2d 298, 301 (Alaska 1961).

10. *Alaska Airlines, Inc. v. Sweat,* 568 P.2d at 933.

11. *Id.* at 934.

12. *Id.* at 938.

13. *Id.* at 934.

14. The superior court stated: "Mr. Sweat has lost certain retirement benefits that would have

been worth . . . $324,508.00 had he remained in the union."

15. Because the Sweats clearly sought recovery for loss of pension benefits, the recovery should not be diminished merely because the superior court utilized a method of calculation in *Sweat I* which did not specifically implicate the contribution issue. Thus, *Michna v. City of Houston,* 534 S.W.2d 728, 730 (Tex.Civ.App. 1976), where new relief was requested on remand, is distinguishable. Similarly distinguishable is *Pearson v. Bachner,* 503 P.2d 1401, 1402 (Alaska 1972), where recovery for pre-judgment interest was denied because it was not sought at trial or in two prior appeals.

ness activities just as Mr.—Dr. Heliker relies upon statistics that he derives from government publications and thus and so. They're all hearsay, too, in the sense that the author of them and the person who [compiled] them and [says] that they're accurate isn't present, isn't testifying as to the accuracy. I contend that this is the same kind of information and it's the same kind of information that all the witnesses essentially in this case used to testify including the—I might add, the union representative and Dr. Heliker.

THE COURT: There's no question that it is, in effect, hearsay, but you—I don't see any reason to question its reliability as to what the figures would be, and I suspect that the witness could probably have dug it out just based upon payroll rather than multiplying the figures. I'll allow the answer.

Steige conceded lack of personal knowledge about the contributions.[16]

Steige also testified that C.M.&H. would contribute $105.77 per month for health benefits for the 30.7 years remaining in Sweat's work life. This figure was acquired in the same manner as that for the C.M.&H. pension contributions. The admissibility of this figure is challenged as well. Steige's testimony is the basis of the Sweats' cross-appeal.

Alaska does not argue that the testimony related to Steige by an actuary through intermediaries was not hearsay. Instead, it relies on the exception to the hearsay rules found in Federal Rule of Evidence 803(24). This rule and proposed Alaska Rule of Evidence 803(w) provide in identical terms:

> Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

This rule recognizes a relaxation of rigid application of categorical exceptions to the hearsay rule. We note that recent case law evinces a trend in this direction where there exist sufficient grounds to find the testimony trustworthy.[17]

---

16. Steige testified as follows:

Q. Mr. Steige, as a matter of fact these figures—you didn't really get these figures yourself from the actuary, did you, you had someone else in your office get these figures?
A. I asked my assistant to contact our agent who . . . happens to be the servicing Equitable agent to inquire of his people to furnish the information back to us.
Q. All right. So he's actually the guy who sells the insurance to you, isn't that correct, the agent?
A. He's a part of it. It's not quite that direct.
Q. And he didn't have the information, he had to go to somebody else?
A. No, he can't compute it himself. He doesn't know either. He has to go back to wherever they do this business.
Q. And your assistant didn't compute it?
A. No.

Q. Okay, and do you know who it was who computed it for the agent so the agent could tell your assistant who could tell you?
A. I haven't the faintest idea.
Q. And do you have any idea whether that person is a person who has special training as an actuarial?
A. Well, I suspect he has.
Q. Well, do you have any information—do you have any knowledge that he has any particular training to equip him to make these projections in investments?
A. No, not directly except that we do rely on them.

17. See Sabatino v. Curtiss National Bank of Miami Springs, 415 F.2d 632, 635–37 (5th Cir. 1969). See also, McCormick on Evidence §§ 325–27 (2d ed. 1972).

We believe the fact that Steige was a disinterested witness,[18] coupled with his testimony that C.M.&H. relies on actuarial data so acquired,[19] renders the testimony sufficiently reliable for admission under the aforementioned rule.

The Sweats' argument that their right of cross-examination was curtailed due to Steige's lack of familiarity with the subject does not convince us otherwise. In an action for damages, the burden of proof rests with the plaintiffs. Thus, the Sweats had the burden of proof on the amount of the set-off.[20] If Steige's testimony is stricken, the awards of damages based in part on his testimony would fail for uncertainty, since the Sweats admit that his testimony provided the sole basis for calculation of the offset. Steige's data, therefore, in one sense operated in the Sweats' favor.[21] The superior court did not err in receiving and considering Steige's testimony.

## CONTRIBUTIONS BASED ON FUTURE INCREASED EARNINGS

The superior court computed the pension contributions from C.M.&H. at $1,082.87 annually for 30.7 years. Alaska questioned the court's failure to utilize the higher contribution rate for the last 25.7 years incident to the anticipated increase of Sweat's wages to $12.00 an hour.[22] The court indicated that its decision was based on the fact that pension contributions from I.B.E.W. were computed at a constant rate,[23] and the fact that the contributions for the last 25.7 years at C.M.&H. included the factor of increased contributions for payments of premiums to fund the plan attributable to increases in Sweat's age. Thus, a constant annual contribution from C.M.&H., based on a wage of $8.65 per hour, was utilized. Steige testified, however, that the contribution rate for the last 25.7 years of Sweat's employment would be higher, based on a wage of $12.00 per hour and higher premiums due to increases in his age.[24]

In *Sweat I,* we found that the $12.00 per hour wage predicted to be paid to Sweat by C.M.&H. after five years was based on merit,[25] and not on the impact of inflation on wages. *Alaska Airlines, Inc. v. Sweat,* 568 P.2d at 936–37. Thus, the constant rate applied to I.B.E.W. contributions cannot justify ignoring the higher rate of C.M.

**18.** Steige is general administrative manager and a consulting engineer with C.M.&H. and has supervisory duties over various classes of employees. Neither C.M.&H. nor Steige has any apparent financial interest in the outcome of this lawsuit.

**19.** *See* Note 16, *supra.*

**20.** The Sweats erroneously place the burden of proof on the set-off on Alaska. They cite no authority for the proposition that this burden shifts from the plaintiff. McCormick on Damages, § 14 at 54 (1935), states:
> In addition to proving the fact of loss, the plaintiff must ordinarily prove, so far as it is susceptible of proof, the extent, that is, the equivalent in money, of his loss or injury. (footnotes omitted)

*See also,* Stein, Damages and Recovery: Personal Injury and Death Actions, § 60 at 97 (1972):
> In order to recover for lost time and decreased earning capacity, the plaintiff must carry the burden of establishing that his injury did bring about a loss of time and impairment of earning capacity, and he must prove the extent and probable duration of that impairment. (footnote omitted)

At the original trial, the Sweats quite properly introduced evidence of Mr. Sweat's reduced wages with C.M.&H. to prove the amount of anticipated loss of wages. We see no reason why that burden should change with reference to damages attributable to loss of health, welfare and retirement benefits.

**21.** For similar reasons, we believe that Alaska's failure to identify the declarant in advance of trial, as provided in Fed.R.Evid. 803(24), did not prejudice the Sweats.

**22.** *See* summary of Steige's testimony, *supra.*

**23.** The court set the I.B.E.W. contributions at $136,730.00 for the 30.7 years, relying on testimony on the per hour compensable pension rate offered at the first trial.

**24.** *See generally, State v. Guinn,* 555 P.2d 530, 546–47 (Alaska 1976).

**25.** A portion of the contributions was used to pay premiums on life insurance for employees, and those premiums increased with the age of the employees.

&H.'s contributions for the last 25.7 years. *Id.* at 934. There is no testimony that merit increases were anticipated as part of the lost I.B.E.W. compensation. An increase in C.M.&H.'s contributions incident to a wage increase based on merit is a reasonable offset against lost I.B.E.W. contributions.

With reference to the Sweats' contention that the increased premium payments attributable to increases in Sweat's age should not be included as contributions of C.M.&H., Alaska replies in essence that employer contributions are employer contributions regardless of whether certain portions are allocated to any life insurance whose premiums vary with the age of the insured.

We agree. C.M.&H.'s contributions, however allocated, are utilized in order to properly ascertain the amount of damages due the Sweats for loss of I.B.E.W. benefits. Thus, as we held in *Sweat I,* the contributions are merely a *measure* of the loss in terms of the employers' costs in funding the two benefit systems.[26] That C.M.&H. would incur increased costs due to Sweat's increases in age over the years of his employment does not alter the fact that such costs are part of the C.M.&H. *contributions* which form the basis of the offset.

We hold that the superior court erred in failing to compute the offset at the higher rate for the last 25.7 years of Sweat's work life expectancy and that it would not be error to include the increases in contributions due to the age factor.

## ATTORNEY'S FEES

In *Sweat I,* the superior court awarded attorney's fees without stating its reasons for deviating from the fee schedule contained in Civil Rule 82(a). 568 P.2d at 937–38. We remanded, stating:

> The court upon remand should reassess attorney's fees and, in the event of any variance, set forth its reasons for departing from the schedule set forth in Civil Rule 82(a).[27]

568 P.2d at 938. On remand, the court followed Civil Rule 82 and applied it to the amended judgment, stating:

> I frankly don't have in mind what my reasons were at the last time when I awarded $50,000.00. It seemed a reasonable figure at the time. I presume that's why I awarded it. However we've had a decrease in the total judgment, based on the appeal. The Supreme court at least tacitly appears to approve of using the formula set forth in Rule 82 and no real reasons have been presented why it shouldn't be followed and calculate what the total judgment is and what it comes to now, I have no idea, but I'll award [attorney's] fees on the basis of Rule 82, on whatever the judgment is.[28]

Alaska contends that the superior court awarded attorney's fees on the mistaken assumption that the mandate in *Sweat I*

---

**26.** The life insurance, as we understand it, is part of the benefit "package" provided to Sweat by C.M.&H. In *Sweat I,* we found that the contributions were a proper measure of the value of the ultimate recovery from C.M.&H. This would then offset the lost recovery from I.B.E.W., also valued in terms of employer contributions. Thus, recovery is for loss of benefits, and the contribution rate is the measure of the value thereof. 568 P.2d at 933–34.

**27.** *See Fairbanks Builders, Inc., et al. v. Sandstrom Plumbing and Heating, Inc.,* 555 P.2d 964, 966 (Alaska 1976); *Kenai Power Corp. v. Strandberg,* 415 P.2d 659, 661 (Alaska 1966); *Patrick v. Sedwick,* 413 P.2d 169, 179 (Alaska 1966).

**28.** Elaborating on its award, the court also stated:

> I really do not recall what reasons went through my mind when I awarded the $50,-000.00 last time, other than I thought it was a reasonable sum. And that's not good enough. And I can't tell you right now why I thought a year and a half ago that that was a reasonable sum. I can only say at this time that they gave it to me to give findings as to why that I thought it was reasonable. You know, I could sit here and say reason as to why I thought $50,000.00 was right, and I should have done that the last time. I didn't do that. They've remanded it to me to . . award them on Rule 82 as I read them and it says if there's any variance, set forth its reason for departing from the schedule set forth in Rule 82(a). I just don't intend to depart. I'm going to award them based on Rule 82(a).

required adherence to the schedule of Civil Rule 82(a). It is argued that the mandate compelled a statement of reasons for initial non-adherence rather than a retreat to the schedule. This point of appeal borders on the frivolous. A fair reading of *Sweat I* and excerpts of the remand hearing quoted, *supra,* indicates that the judge simply elected to follow the schedule. In doing what it could have done initially without a statement of reasons, the court was in full compliance with the mandate.

## CONCLUSION

In summary, we find that the superior court erred in failing to apply the higher contribution rate for C.M.&H. contributions for the last 25.7 years of Sweat's work life. We find no error in the admission of Steige's testimony, the award of attorney's fees or the consideration of post-accident/pre-trial I.B.E.W. contributions. On remand, the court should utilize the higher contribution rate, and it may recompute attorney's fees based on the judgment as altered by this calculation.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.