Richard D. HOLLINGER,
Plaintiff-Appellee,

and

Stella Hollinger, Plaintiff,

v.

UNITED STATES of America,
Defendant-Appellant.

Richard D. HOLLINGER,
Plaintiff-Appellant,

and

Stella Hollinger, Plaintiff,

v.

UNITED STATES of America,
Defendant-Appellee.

Nos. 79–4526, 79–4527.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1980.

Decided March 6, 1981.

---

Richard D. Kibby, Anchorage, Alaska, argued for defendant-appellant; Charles Coe, Asst. U. S. Atty., Anchorage, Alaska, on brief.

638

Kenneth D. Jensen, Jensen, Harris & Roth, Anchorage, Alaska, argued for plaintiff-appellee; Jeffrey H. Roth, Jensen, Harris & Roth, Anchorage, Alaska, on brief.

Before WALLACE, HUG and SCHROEDER, Circuit Judges.

WALLACE, Circuit Judge:

The parties appeal from a judgment entered by the district court in this negligence action brought against the United States of America by the Hollingers pursuant to the provisions of the Federal Tort Claims Act (28 U.S.C. § 1346(b)). Stella Hollinger's claim was dismissed and is not before us. Subsequent to trial, the district judge entered his Findings of Fact, Conclusions of Law and Final Judgment, awarding Hollinger damages in the sum of $462,000. Hollinger moved for entry of amended and additional findings of fact, and the court denied that motion.

On appeal, the government argues that the district judge erred in: (1) applying an incorrect standard of care to the government; (2) failing to rule on certain objections and motions; (3) finding that Hollinger was totally disabled from pursuing all normal courses of employment; and (4) failing to assess a greater percentage of comparative fault against Hollinger. In his cross-appeal, Hollinger contends that the district court erred in: (1) finding that he was thirty percent comparatively negligent; and (2) failing to enter sufficient subsidiary findings of fact concerning the amount of impaired earning capacity.

We remand to the district court for more specific findings as to impaired earning capacity. We affirm as to all other claims of error.

I

On the morning of April 8, 1975, Hollinger, a civilian contractor's employee, slipped and fell while descending from a bulk fuel station platform owned and maintained by the government through its agent, the United States Air Force, at Elmendorf Air Force Base, Alaska. The surface upon which Hollinger fell was a concrete platform designed to provide support for and access to an elevated petroleum truck fuel stand. On the night before Hollinger's injury, a light snow had fallen and by 7:20 a. m. it had been removed from the platform by government employees. Light snow had continued to fall throughout the morning. Around noon, Hollinger parked his fuel truck near the concrete platform. Hollinger then stepped out of the truck and onto the platform, ascended a graded steel stairway to the top of the truck fuel stand, and opened the hatches on the top of the truck. A government agent, Thomas Plum, was on duty, also on the top of the stand. Plum preceded Hollinger down the stairs and advised Hollinger to "keep an eye out" because "it was a little slippery." Hollinger came down the stairs onto the platform where he slipped and fell.

Hollinger did not appear to be seriously injured at the time of the accident, and did not report the incident to the government. He did not consult a physician until April 28th, 1975, and continued to work regular shifts until October, 1975.

In November 1975, surgery was performed on Hollinger. The treating physician, however, could not find the cause of Hollinger's pain. The government's physician also found no neurological damage and no etiological cause for the discomfort.

Finally Hollinger undertook a vocational rehabilitation program designed by vocational counselor at Donald E. Sharp Pain Clinic in San Diego, California. On his return to Alaska, with the assistance of the State Office of Vocational Rehabilitation and a compensation insurance carrier, Hollinger was placed in a subsidized vocational training position. He contended that his physical limitations and inability to tolerate pain continued without significant improvement.

II

We review Federal Tort Claims Act findings of fact by a federal rather than a

state review standard. *Felder v. United States*, 543 F.2d 657, 664 (9th Cir. 1976). Findings of fact are overturned only when clearly erroneous. Fed.R.Civ.P. 52(a).

■ Even though a determination of negligence is generally recognized as a mixed question of law and fact, *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978), our review of a finding of negligence is governed by the clearly erroneous standard. *Id.* However, an appellate review of what standard of conduct should have been utilized in a negligence finding is a legal question. It follows:

> ... in most cases where the trial judge has erred in determining what standard of conduct should have been used in a negligence determination, that the ultimate finding as to negligence does not pass muster under the "clearly erroneous" test.

*Id.* at 994–95. *See also Pacific Tow Boat Co. v. States Marine Corp. of Delaware*, 276 F.2d 745, 752 (9th Cir. 1960). As a result, the district court's findings with respect to the negligence of the government and the comparative negligence of Hollinger will be overturned if we find the application of the wrong standard of conduct results in a clearly erroneous finding.

The government argues that the district judge used the wrong standard in evaluating its care of the platform. Because we apply the state substantive tort law under the Federal Tort Claims Act, the government relies on *Hale v. City of Anchorage*, 389 P.2d 434 (Alaska 1964), in which the Alaska Supreme Court held that a municipality is not liable for injuries sustained by persons due to the natural accumulation of ice and snow on sidewalks. *Id.* at 437–38. If the district court's finding of negligence was based exclusively on the presence of ice and snow on the platform, *Hale* would be controlling. The district court found, however, that the platform upon which Hollinger fell "was painted with a high gloss enamel paint," and "that the government, through its employees, had applied a new coat of the high gloss enamel paint to the concrete platform during the summer pre-

ceding the accident, notwithstanding the fact that the government had constructive notice and actual knowledge that the paint used was extremely slippery ...." We conclude therefore that the standard of care articulated by the Alaska Supreme Court in *Hale* is not applicable in the instant case.

■ The question to be answered by the trier of fact is whether the landowner has exercised "reasonable care under all circumstances." *Webb v. City and Borough of Sitka*, 561 P.2d 731, 734 (Alaska 1977). This was the standard properly applied by the district court. As to its application to this case, there is evidence in the record that the government had not exercised reasonable care in applying the paint to the platform. In his deposition, Plum described the surface as being "slippery." He also stated that he had told his supervisors that the paint would not be appropriate for the surface because it was "too slick," and that his supervisors told him to use the paint anyway. Plum also stated that he observed a difference in the slipperiness of the surface after the paint was applied, and he even recalled falling down on the surface himself. The surface was also described by witness McCalment as a "high-gloss yellow paint ... very shiny and slick when it got wet." Witness Pederson characterized the surface as a "high-gloss enamel." We conclude that the finding by the district court that the government was negligent was not clearly erroneous.

### III

■ Hollinger argues that the district judge was clearly in error in finding that he, "being familiar with the premises at which the injury occurred was comparatively negligent to a percentage of thirty percent." The standard of care used to evaluate comparative negligence was discussed by the Alaska Supreme Court in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975). There, the court first accepted the "pure" comparative negligence doctrine; hence, a plaintiff's damages are reduced in exact proportion to the amount of negligence that is attributed to him. *Id.* at 1049. The ques-

tion presented was whether the plaintiff, Kaatz, was comparatively negligent when he drove his vehicle on a road which he knew was in a dangerous condition. The court stated:

> If Kaatz did drive the road shortly before climbing into the loader, then it is apparent that he would have or should have perceived the treacherous and unsanded condition of the road. If, despite such knowledge, he chose to ride in the cab of a vehicle which is notoriously "unstable" on ice, then his conduct can be properly said to be voluntary and unreasonable.

*Id.* at 1046. Similarly in the instant case, Hollinger had walked across this platform on many previous occasions. In fact Hollinger had made a trip to the fuel stand earlier that morning. Plum had warned Hollinger immediately prior to his descent onto the concrete surface "to keep an eye out" because "it was a little slippery." In view of this evidence, it is apparent that Hollinger would have or should have perceived the dangerous condition of the platform. Therefore, under the standard stated by the Alaska Supreme Court in *Kaatz*, we hold that the district court did not commit clear error in finding that Hollinger was comparatively negligent to the extent of thirty percent.

### IV

The government argues that the district court's failure to rule on the admissibility of certain evidence and on motions to strike evidence had a substantial adverse impact on the ability of the government to defend this action. The government points specifically to the district judge's failure to rule on certain color photographs of the fuel stand where the accident took place, taken in July, 1976, as well as the testimony of Janet Mott, a vocational rehabilitation expert, and portions of the depositions of Plum, Norma Piekarski and Herbert Holden. We find it unnecessary to discuss each one of these objections separately.

■ In non-jury cases, the district judge is given great latitude in the admission or exclusion of evidence. 7 Moore's *Federal Practice* § 61.07[3] (2d ed.). We have held that a district judge sitting without a jury has discretion to receive evidence that might be inadmissible in a jury trial. *Alioto v. Cowles Communications, Inc.,* 623 F.2d 616, 617, 620 (9th Cir. 1980); *see Rangen, Inc. v. Sterling Nelson & Sons, Inc.,* 351 F.2d 851, 863 (9th Cir. 1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966). Assuming the evidence was admitted, we do not find reversible error. But that is not the government's complaint. Here, as we understand it, the government contends it was put at a disadvantage because the district court did not specifically rule one way or the other.

■ We agree that the district judge should have ruled on the objections and the motions. We also agree that the government was put to a disadvantage by the failure to do so. Nevertheless, we do not conclude that reversal is required. If the court did not sustain the objections, or grant the motions to strike, the government should have assumed that the evidence was received. The failure to rule is governed by Rule 61 of the Federal Rules of Civil Procedure which provides in part that:

> no error or defect in any ruling or order or in anything done or omitted by the court ... is ground for ... vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.

The government has demonstrated inconvenience and that defending the case was made more difficult, but it has not shown that the district judge's failure to rule on these matters resulted in substantial injustice.

### V

■ The government's next assignment of error pertains to the district court's finding that Hollinger was totally disabled from pursuing all normal courses of employment. The government first contends that the wording of the finding lacks sufficient clarity. However, the government failed to move the district court to amend its findings or make additional findings. Thus the

government cannot now complain of the lack of specificity in the finding. *United States v. Pendergrast,* 241 F.2d 687, 689 (4th Cir. 1957). The government can, however, raise the question of sufficiency of the evidence to support the finding of total disability whether or not the government objected to the finding. Fed.R.Civ.P. 52(b).[1]

■ Doctor Voke testified that Hollinger was totally disabled from pursuing full-time manual employment as either a pipefitter or a truck driver. Janet Mott, a vocational rehabilitation counselor, testified that Hollinger would not "be employable on a competitive basis." In light of this evidence we hold that the district court did not commit clear error in finding that Hollinger's disability was permanent.

■ Hollinger also challenges the findings on damages. He argues that Rule 52(a) of the Federal Rules of Civil Procedure requires the trial court to enter a sufficient subsidiary finding of fact as is necessary to disclose to the appellate court the steps by which the trial court reached its ultimate conclusion concerning the impairment of earning capacity. Rule 52(a) provides in part:

> In all actions tried upon the facts without a jury or without an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon ...

In Finding of Fact No. 14, the district court determined:

> That Hollinger, subsequent to trial, and adjusted to present value, will suffer partial diminution of earning capacity, and loss of non-monetary earnings, as follows, including consideration of items such as deductions for federal and state income taxes, social security and fringe benefits, and non-monetary earnings, in the sum of $350,000.00.

Immediately after entry of the judgment, Hollinger moved the court pursuant to Rule 52(b) to amend its findings or make additional findings. That motion was denied by the district court. We conclude the motion should have been granted. We remand the case to the district court for additional findings with respect to the specific components of this damages award.

Both parties have expressed some confusion on the issue of whether the district court should consider adjustment of future damages to present value and deductions from the award for federal and state income taxes. It is difficult to determine how the district court resolved the issue.

A problem arises pertaining to whether the future damages should be adjusted to reflect the effect of inflation and whether the award should be reduced to present value. The law of Alaska takes inflation into account by offsetting it against the interest rate. That is to say, future earnings are not increased by an inflationary factor, but neither are future earnings reduced to present value. *Beaulieu v. Elliott,* 434 P.2d 665, 671–72 (Alaska 1967); *see also Alaska Airlines, Inc. v. Sweat,* 584 P.2d 544, 546, n.3 (Alaska 1978). This formulation seems inconsistent with our approach in *United States v. English,* 521 F.2d 63 (9th Cir. 1975), where we stated:

> By today's holding that the trier of facts in awarding damages may take into consideration estimated changes in the purchasing power of money, we do *not* mean to imply that the lower court may use our holding as an excuse not to discount an award to its net present value. In other words, the court may not assume that the discount rate and the inflation rate will net to zero. The lower court must first estimate future income and expenses, taking into account estimated changes in the purchasing power of the dollar, and then discount this future net income stream to its present value.

*United States v. English, supra, id.* at 75 (emphasis in text). In *English,* however,

---

1. Federal Rule of Civil Procedure 52(b) provides in part:

    When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.

we were applying the law of California. The question before us is whether the Alaska "offset" approach is acceptable. This question can only be determined by examining whether the result is compensatory or punitive pursuant to 28 U.S.C. § 2674, because even though the amount of damages to be awarded under the Federal Tort Claims Act is governed by the law of the place of the wrongful act, if the local law provides for punitive damages, or permits application of standards which result in a plaintiff receiving more than compensatory damages, then only the compensatory damages may be awarded. *United States v. English, supra*, 521 F.2d at 70. Such an examination should be made in the first instance by the district judge as he compares the result of the Alaska "offset" method with what the result would be if the inflation effect is considered and the award is reduced to present value.

Although a finding on future inflation and interest rates is properly based upon expert witnesses, the district judge need not accept such expert testimony if it lacks convincing force. If there is, however, competent expert testimony that the district judge concludes yields reliable figures for future inflation and interest rates, the calculation should be made by inflating future damages and then reducing them to present value. If this "inflation-reduction" figure is so much lower than the Alaska "offset" figure that he concludes the offset award would be punitive or result in excessive compensation rather than compensatory damages, then the "inflation-reduction" figure should be used. If the district judge is unable to arrive at reliable estimates of future inflation or interest rates, or if the "offset" figure is not punitive or does not impose excessive compensatory damages, then Alaska's "offset" method should be followed. ·

A similar problem arises with respect to deductions from the award for federal and state income taxes. In *Beaulieu*, the Alaska Supreme Court held that no deduction should be made for taxes. 434 P.2d at 670–73. We have found that a failure to deduct for federal and state income taxes

can result in the imposition of excessive compensatory damages or punitive damages against the government. *Felder v. United States*, 543 F.2d 657, 670 (9th Cir. 1976); *United States v. English, supra*, 521 F.2d at 71–72 & n.8. In *Felder* we stated:

> The effect is especially punitive where, as under the Act, the federal government is the defendant. By its tortious activity the Government loses the income taxes the decedents would have paid over the years. If the Government were nevertheless required to pay the survivors an amount estimated to equal those lost taxes, it would be doubly sanctioned.

*Felder, supra*, 543 F.2d at 670, n.17. Similarly we find the damages rule in *Beaulieu* to have such a punitive effect. Therefore, if the district judge has not already done so, a deduction should be made from future earnings damages for federal and state income taxes.

The interest that Hollinger will earn on the discounted principal in a safe investment, however, will also be taxable. The effective interest rate for an investor is equal to the stated interest rate reduced by the product of the stated interest rate and the investor's tax rate. The principal amount necessary to produce a given after tax yield per month is the principal amount that would be necessary to produce that amount if there were no tax divided by the percentage of his income that the investor retains after taxes. Thus an award of $600,000, not taking the tax on interest into effect, would be increased to $1,000,000 for a 40% tax bracket recipient. Clearly, then, the possible adjustments involved in taking this aspect of taxes into account are significant. Although we have found no cases in our court where such a calculation was made, other courts have properly made such an adjustment. *McWeeney v. New York, N. H. & H. R. R. Co.*, 282 F.2d 34, 37 (2d Cir. 1960). The Supreme Court has also recently suggested that the tax on the discounted principal might properly be considered. *Norfolk & Western R. Co. v. Liepelt*, 444 U.S. 490, 495, 100 S.Ct. 755, 758, 62 L.Ed.2d 689 (1980).

The tax on projected earnings may "offset" the tax on the discounted principal.

Alaska is thus within the spirit of its inflation-interest offset in declining to take taxes into account. As a result, we adopt the same approach for taxes as was adopted for this future inflation-interest rates calculation. If the district judge receives reliable figures for tax reduction on future earnings and tax effects on discounted principal, then the calculation should be made. This calculation should be used if it is so much lower than the offset figure as to show that the offset figure would be punitive or result in excessive compensation. If reliable figures are not available or if the offset method is not punitive, then the offset method should be used.[2]

In conclusion, we remand to the district judge for additional subsidiary findings with respect to his computation of future damages in Finding of Fact No. 14. With respect to the district court's finding that the government was liable under the Federal Tort Claims Act, that Hollinger was comparatively negligent, and in all other respects relating to the award of damages, we affirm.

AFFIRMED IN PART; REMANDED IN PART.

---

**2.** We recognize that *Felder* did not discuss the tax effects on discounted principal. *Felder*, however, was concerned with Arizona law. Arizona does not use the "offset" method used by Alaska. As a result this calculation was not before the court in *Felder*.