**Pedro ALMA, Plaintiff-Appellee,**

v.

**MANUFACTURERS HANOVER TRUST CO., as Trustee for Tanker Charter Corporation and Maritime Overseas Corporation, Defendant-Appellant.**

**No. 79–4614.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1981.

Decided Aug. 17, 1982.

John H. Riddle, Lillick, McHose & Charles, San Francisco, Cal., for defendant-appellant.

Carolyn L. Rosenblatt, Law Offices of Bernard Sacks & Sullivan, Graham & Camp, San Francisco, Cal., for plaintiff-appellee.

Before MERRILL, HUG and SKOPIL, Circuit Judges.

HUG, Circuit Judge:

This case involves a ship owner's appeal of a judgment that held it liable for damages for the injuries of an employee. The ship owner disputes the district court's consideration of a medical expert's opinion and challenges the computation of the damage award. We affirm the judgment of the district court.

I

## BACKGROUND AND FACTS

Alma brought this action under the Jones Act, 46 U.S.C. § 688, for injuries suffered in a fall while he was serving aboard the Overseas Juneau as an ordinary seaman. He named as defendants the ship's owner, Maritime Overseas Corporation, and its trustee, Manufacturers Hanover Trust Company. The complaint alleged that Alma's injuries were due to the defendants' negligence and to the unsafe and unseaworthy condition of the vessel. The specific injury claimed was aggravation of a congenital defect affecting Alma's spine, which resulted in permanent partial disability.

The district court held that the complaint failed to state a claim against Manufacturers Hanover Trust. The dismissal of claims against that defendant is not appealed here.

At trial, Maritime Overseas Corporation ("Maritime") admitted liability for Alma's fall, but denied that any permanent disability was caused by the fall. It contended that such a disability, if it existed, was caused by diabetes mellitus, from which Alma suffers. Maritime presented the testimony of a neurosurgeon, Dr. Pevehouse, to support this theory. Alma supported his theory that the fall caused his disability with the testimony of an orthopedic surgeon, Dr. Cowan. He also presented testimony of a second orthopedic surgeon, Dr. Gill, to rebut the testimony of Dr. Pevehouse.

After considering the testimony of all three experts, the district court found that Alma did suffer a disability caused by the fall, and that he would lose two months work a year for the remainder of his work-life expectancy. The district court's award included $1,961.80 for loss of past earnings,

$27,720.00 [1] for loss of future earnings, $10,-000.00 for pain and suffering, and the costs of suit.

Maritime made a timely motion for a new trial on two grounds. First, it claimed that the district court erred in basing its decision in part upon the testimony of Dr. Gill, whose function, it contended, should have been limited to that of a rebuttal witness. Second, it claimed that the court erred when it failed to discount the award of future earnings to its present value, though no evidence of an appropriate discount rate was presented. The motion for a new trial was denied. This appeal is based on both issues.

## II

## CONSIDERATION OF EXPERT TESTIMONY

None of the three medical witnesses treated Alma; all examined him for the purpose of testifying at trial. Dr. John E. Cowan, an orthopedic surgeon, was called by the plaintiff in his case in chief. He testified that Alma had a congenital spinal defect, known as spondylitis, in the fifth lumbar vertebra. This defect consists of an incomplete development of the vertebra. He also testified that the X-rays revealed a significant displacement of this vertebra at this point, a condition known as spondylolisthesis. It was his opinion that the fall had aggravated the congenital spinal defect, causing low back pain radiating down the right leg and resulting in permanent partial disability. He indicated that Alma's diabetic condition had no bearing on the disability in his back and right leg.

Maritime, in the presentation of its defense, called Dr. Byron C. Pevehouse, a neurosurgeon. He agreed that Alma had the congenital spinal defect (spondylitis), but he testified that the X-rays did not reveal any significant displacement of the vertebra (spondylolisthesis), and that without such displacement the disability claimed could not be the result of the fall having injured the vertebra. He attributed Alma's symptoms to his diabetes.

In rebuttal the plaintiff called Dr. Gerald Gill, an orthopedic surgeon, who had done considerable specialized research concerning spondylolisthesis. Dr. Gill had been asked by plaintiff's counsel to examine Alma following Dr. Pevehouse's testimony. Dr. Gill took some additional X-rays and performed some additional reflex tests. He concluded that the fall had aggravated the spinal defect and caused permanent partial disability. He disagreed with Dr. Pevehouse that the initial X-rays showed no vertebra displacement and also testified that the newer X-rays he had taken of Alma in a standing position further revealed the displacement. He also testified that the ankle-jerk test he had performed confirmed his conclusion concerning the disability and its cause.

Because the doctor was called as a rebuttal witness, Maritime objected to admission of the new X-rays and to testimony concerning Dr. Gill's own examination of Alma. The district court ruled that Dr. Gill's testimony initially would be limited to consideration of materials already in evidence, but that the court would later consider a motion to reopen the plaintiff's case. Provision was made for Maritime's counsel to examine the X-rays taken by Dr. Gill.

Initial questioning of Dr. Gill was limited to rebuttal testimony. Alma's counsel then asked Dr. Gill about conclusions drawn from his own examination of Alma. Maritime's counsel objected to this inquiry, but stated no grounds for the objection. In overruling the objection, the court clearly stated that Dr. Gill would be permitted to "reopen the subject" of his examination of Alma. Maritime did not reassert its objection. It did not request the opportunity to present rebuttal evidence; nor did it request that the court confine its consideration of the testimony to its rebuttal aspects.

The opinion evidence presented by Dr. Gill was clearly relevant and Dr. Gill was

---

1. The district court originally awarded Alma $30,240.00 for lost future earnings, based on a work expectancy of twelve years. The work expectancy was later adjusted to eleven years, and the judgment amended to an award of $27,720.00.

clearly qualified to give the opinion. The only question was the order of proof.

■ In non-jury cases, the district court is given great latitude in the admission of evidence. *Hollinger v. United States*, 651 F.2d 636, 640 (9th Cir. 1981). Where a new trial is sought on the basis of an evidentiary ruling, evaluation of the motion is left to the discretion of the trial judge. *Traver v. Meshriy*, 627 F.2d 934, 940–41 (9th Cir. 1980); *Ruiz v. Hamburg-American Line*, 478 F.2d 29, 31 (9th Cir. 1973). The trial court may grant a retrial on the grounds of fundamental unfairness. *Peacock v. Board of Regents, etc.*, 597 F.2d 163, 165 (9th Cir. 1979). However, the district court's conclusion that no such unfairness was present may be reversed only if this court has a definite conviction that that conclusion was a clear error of judgment. *Ruiz v. Hamburg-American Line*, 478 F.2d at 31, *quoting States Steamship Co. v. Philippine Airlines*, 426 F.2d 803, 804 (9th Cir. 1970).

■ In his memorandum denying the motion for new trial and amendment of the judgment, the trial judge carefully examined the circumstances surrounding Dr. Gill's testimony. He identified portions of the trial transcript in which he stated that the X-rays taken by Dr. Gill would be admitted and that the doctor would be allowed to describe his examination of Alma. He had stated specifically that Dr. Gill could reopen the subject. He noted that Maritime failed to object specifically to these statements or to seek limitation of the use of the evidence. He concluded, based on these findings, that there was no unfairness or surprise. This conclusion is well-supported by the record.

### III

### COMPUTATION OF THE PLAINTIFF'S AWARD

The second issue on appeal is whether the court erred in failing to discount the award of future earnings to its present value. Maritime presented no evidence at trial concerning the appropriate discount rate, but contends that court was obligated to discount the award at a rate that it should determine as a matter of judicial notice. The district court held that in absence of evidence of an appropriate discount rate it would not discount the award.

In *United States v. English*, 521 F.2d 63 (9th Cir. 1975) this court considered the application of the interaction of a present value discount and of an adjustment for inflation to damage awards. We held that in computing a damage award under California law, the trier of fact could consider competent evidence of inflation. *Id.* at 74. That decision was expressly limited to wrongful death actions. *Id.* at 76. It was also limited to Federal Tort Claims actions in which the applicable state law supported consideration of inflation. *See Hollinger v. United States*, 651 F.2d 636, 641–42 (9th Cir. 1981).

In *Sauers v. Alaska Barge*, 600 F.2d 238 (9th Cir. 1979), the *English* rule was applied to the damage claims of an injured plaintiff who brought his action under federal law. We held that district courts are to consider competent evidence of inflation in computing damage awards. *Id.* at 246–247. However, we did not reach the question of how the dual factors of the present value discount and the adjustment for inflation affect that computation. This case presents the issues of the relationship of the two factors and of the evidentiary responsibility as to each factor.

The initial award of future earnings made by the district court in this case was neither discounted to present value nor adjusted for inflation. Maritime argued in its motion for a new trial that the trial judge was required by law to reduce the award to its present value. Maritime contends here that it had no obligation at trial to present evidence of an appropriate discount rate. Instead, it claims the present value reduction is a simple mathematical calculation that the judge must make by taking judicial notice of the appropriate discount rate.

Alma tendered the opinion of an economist that analyzed the relationship of

present value discount and inflation adjustments. The expert concluded that the two rates were "essentially equal." On this basis, Alma argued before the district court that failure to compute the present value discount was not error, because the discount and the inflation adjustment would offset one another.

In considering these arguments, the district judge correctly observed the admonishment in *English* that "the [trial] court may not assume that the discount rate and the inflation rate will net to zero." *United States v. English*, 521 F.2d at 75. He concluded that Maritime had incorrectly relied upon the holding in *English* that failure to discount was error; the trial court in *English* had before it competent evidence of the discount rate. Because Maritime had presented no competent evidence of the rate, the district court found that no discount was appropriate. Similarly, Alma's failure to present competent evidence of inflationary factors was held to defeat any claim to an adjustment for inflation.

█ The fairest and most reasonable damage award is one which takes into account both the discount and the adjustment for inflation. With such an award the plaintiff is made whole without receiving a windfall at the defendant's expense. However, this preference does not relieve either party of the burden of presenting evidence as to the award's computation. Each of the two elements must be independently established by competent evidence. *United States v. English*, 521 F.2d at 75; *Hollinger v. United States*, 651 F.2d at 641–42.

█ In either a jury or a non-jury trial, the damage evidence presented may lead to one of three computations. Where, as here, neither party provides competent evidence of the inflation rate or the discount rate, the district court must make a lump sum award that is not adjusted for either factor. We specifically reject Maritime's claim that the trial judge is obligated to determine an appropriate discount rate without evidence to reach that determination. The rate is an evidentiary issue, and thus it is the responsibility of the parties to produce evidence of the rate that is appropriate. *Chesapeake & Ohio Railway Company v. Kelly*, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916).

Where competent evidence of the discount rate is presented, but the plaintiff fails to establish an inflation rate, the trial court must, of course, discount the lump sum award to present value and make no adjustment for inflation. Similarly, where the plaintiff adequately proves the inflation factor, but the defendant fails to establish the discount rate, the lump sum must be adjusted only for inflation. We emphasize that these two factors operate independently. The inflationary adjustment and the discount to present value are of equal importance in computing an economically realistic award. Therefore, an award adjusted only for inflation is no less acceptable than one adjusted only to discount to present value.

█ Finally, where competent evidence of each factor is presented, the finder of fact must consider both the discount and the inflation rate in computing the award. The cases and authorities suggest several approaches to this mathematical calculation.[2] The choice of such methods is best

2. A survey of these authorities reveals three possible methods. The first, the "inflation-reduction" or "independent incorporation" method, requires inflation of the entire lump sum award by the compounded rate of inflation and then application of the discount rate to the inflated sum. *See Hollinger v. United States*, 651 F.2d at 642.

The second approach, the "offset" method, requires that the inflation rate be subtracted from the discount rate, to achieve the "real" interest rate, which is then applied to the lump sum.

*See Feldman v. Allegheny Airlines, Inc.*, 524 F.2d 384, 387 (2d Cir. 1975). *See generally*, Note, *Future Inflation, Prospective Damages, and the Circuit Courts*, 63 Virginia L.Rev. 105 (1977). In *Sauers v. Alaska Barge*, 600 F.2d at 246 n.14, we noted that the offset method does not conflict with the prohibition in *United States v. English* of using a "washout" approach, in which it is assumed that the two factors will net to zero. 521 F.2d at 75. The "washout" approach is based on an assumption that the two rates are roughly equal. The

left to the district judge, who can determine how best to compute a fair and reasonable award on the basis of the evidence before the court.

## III

## CONCLUSION

The refusal of the district court to grant a new trial on the grounds that consideration of Dr. Gill's testimony constituted unfair surprise is affirmed. The method of computation of the lump sum award was correct in view of the parties' failure to provide competent evidence of either the present value discount or the inflation rate. We therefore affirm the judgment of the district court.

AFFIRMED.

"offset" approach requires independent and adequate proof of each factor before the two can be compared.

Third, several economists have advocated application of a set formula which assumes a constant relationship between the two rates. See, e.g., Formuzis and O'Donnell, Inflation and the Valuation of Future Economic Losses, 38 Montana L.Rev. 297 (1977); Sherman, Projection of Economic Loss: Inflation v. Present Value, 14 Creighton L.Rev. 723 (1981). Acceptance of such formulas would have to be justified by the evidence before the trial court. We express no opinion as to their use.