NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 17 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                Plaintiff-ctr-defendant - Appellee,<br><br>  v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC.; LOAN PAYMENT ADMINISTRATION LLC; DANIEL S. LIPSKY,<br><br>                Defendant-ctr-claimants - Appellants. | No. 24-5940<br><br>D.C. No.<br>3:15-cv-02106-RS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Submitted November 10, 2025[**]
San Francisco, California

Before: CALLAHAN, BUMATAY, and VANDYKE, Circuit Judges.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel S. Lipskey (collectively, "Nationwide") appeal from a bench trial in which they were held liable and assessed penalties for deceptive and abusive practices under the Consumer Financial Protection Act of 2010 ("CFPA"). We previously remanded this case to the district court to consider the effect of relevant Supreme Court and Ninth Circuit opinions issued while the first appeal was pending. *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 18-15431, 2023 WL 566112 (9th Cir. Jan. 27, 2023).

As the parties are familiar with the facts, we do not recount them here. We review the district court's findings of facts for clear error, *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1241 (9th Cir. 2021), interpretations of law de novo, *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 618 (9th Cir. 2018), and evidentiary rulings for abuse of discretion, *Balla v. Idaho*, 29 F.4th 1019, 1024 (9th Cir. 2022). We AFFIRM.

1. Nationwide first argues that the district court's factual findings, which underpinned its CFPA liability, were clearly erroneous. It claims that (1) findings that customers were led astray by representations of "immediate" savings were insufficiently supported by evidence, (2) findings that reasonable customers could have been deceived by promises of specific amounts of monthly or yearly savings were incompatible with other findings, (3) findings that customers were confused as

to whether Nationwide was affiliated with their lenders were contradicted by other evidence, and (4) findings that some reasonable customers would have been misled into believing Nationwide's services were unique were based on illogical assumptions about the sophistication of typical mortgage holders.

Nationwide's arguments fail under the deferential standard of review applicable in this case. Factual findings will not be upset on clear-error review unless the record compels "a definite and firm conviction" that the district court was mistaken. *Wash. Mut., Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017) (quoting *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002)). Here, upon a careful review of the trial record, substantial evidence supports each of the district court's findings. Moreover, because the district court was sitting as a trier of fact, it was within its discretion to discount Nationwide's expert witnesses and studies regarding customer sophistication. Finally, even if some of the district court's factual findings were not perfectly harmonious, they were not so contradictory as to compel "a definite and firm conviction" that a mistake was made.

2. Nationwide next argues that the civil enforcement action against it was invalid because of the Consumer Finance Protection Bureau ("CFPB") director's unconstitutional for-cause removal protections between 2015 and 2020. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213, 238 (2020) (striking down the CFPB director's for-cause removal protections as unconstitutional).

Nationwide argues the enforcement action here is void because (1) it was harmed specifically by the CFPA's unconstitutional for-cause removal provision in effect when this suit was filed, and (2) there was no valid after-the-fact ratification of the enforcement action by a CFPB director subject to direct Presidential oversight.

We need not address the second argument because Nationwide fails on the first under binding precedent. *See Consumer Fin. Prot. Bureau v. Cashcall, Inc.*, 35 F.4th 734, 742 (9th Cir. 2022) (citing *Collins v. Yellen*, 594 U.S. 220 (2021)). Nationwide claims that the CFPB exhibited a culture of "recklessness," caused by the CFPA's for-cause removal protections, which was contrary to then-President Barack Obama's wishes. It further argues that the CFPB would not have pursued the enforcement action here were it not for such a culture. But Nationwide merely relies on non-specific evidence from publicly available executive orders, Congressional testimony, speeches by agency heads, and news articles, along with an audio recording of a private-sector bank employee generally criticizing the CFPB. None of this evidence shows that President Obama would not have pursued the specific investigation of Nationwide at issue here. Nor is such generic evidence sufficient to prove Nationwide suffered other constitutional harms under any standard.

3. Nationwide next argues that this enforcement action is void because the statute of limitations had run before the CFPB filed suit on May 11, 2015. The

24-5940

statute of limitations would have run if the CFPB had either discovered or reasonably should have discovered the violations at issue here before May 11, 2012. *See* 12 U.S.C. § 5564(g)(1) (providing that CFPA enforcement actions must be brought within three years of "discovery" of a violation); *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010) (holding that statutes of limitations based on "discovery" are triggered as of the date of actual discovery of necessary facts or as of the date by which a reasonably diligent litigant would have discovered such facts). The district court found neither condition applied, a finding which we review for clear error. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

The district court did not clearly err. First, Nationwide points to a March 3, 2012, online customer complaint to the CFPB generally alleging that Nationwide was "deceptive in its business practices," and claiming that the author thought that Nationwide was affiliated with his lender. But there is no evidence that, based on the single online complaint, the CFPB discovered or reasonably should have discovered the specific violations that were reflected in its 2015 lawsuit within the few months between March 3 and May 10, 2012. Second, Nationwide points to Richard Cordray's 2011 appointment as the CFPB's enforcement head. It claims that the statute of limitations began running at that point because of Cordray's previous involvement with state-law actions against Nationwide as Ohio's state

attorney general. But, even assuming that Cordray's prior personal knowledge could be imputed to the CFPB upon his appointment, no record evidence shows Cordray had sufficient personal knowledge from his time in the Ohio state attorney general's office to support the later-in-time violations reflected in the CFPB enforcement action here.

4. Nationwide next argues that the district court's findings were not properly specified in its Fed. R. Civ. P. 52(a) order. But Nationwide did not make a timely motion below to amend the district court's findings. *See* Fed. R. Civ. P. 52(b) (providing that motions to amend findings must be brought within 28 days of the entry of judgment). The failure to do so forfeits on appeal arguments that district court findings are not sufficiently specific. *See Hollinger v. United States*, 651 F.2d 636, 640–41 (9th Cir. 1981).

5. Nationwide next argues that it was not a "seller" covered by the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA") because it does not cold-call customers or execute contracts or payment over the phone for its services. The Act defines "telemarketing" as "a plan, program, or campaign which is conducted to induce purchases of goods or services . . . by use of one or more telephones and which involves more than one interstate telephone call." 15 U.S.C. § 6106(4). Regulations define a "seller" as any "person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges

for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(ee).

Nationwide was a "seller" because its activities were encompassed within the TCFAPA's plain statutory and regulatory text. As to statutory language, Nationwide engaged in "telemarketing" because it sent out mailers and operated a call center that fielded millions of telephone calls, all to induce callers to sign up for its services. *See* 15 U.S.C. § 6106(4). And it was a "seller" under the TCFAPA's regulations because it "offer[ed] to provide" financial services to customers who called it. 16 C.F.R. § 310.2(ee). Moreover, Nationwide's attempt to limit the TCFAPA's reach only to sales conducted exclusively by phone fails considering the statute's explicit, narrower exemption for sales conducted by phone if customers call in response to a mailed, written catalogue. *See* 15 U.S.C. § 6106(4); *see also Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980) (relying on the interpretive canon that where a broad statutory term includes enumerated exceptions, courts should not imply unwritten ones).

6. Nationwide finally argues that its counterclaims against the CFPB were improperly rejected and that supportive evidence was impermissibly excluded. Nationwide's counterclaims alleged, in essence, that the CFPB's issuance of a press release about its 2015 enforcement action violated Nationwide's due process rights because it destroyed Nationwide's relationships with banking partners. The district

court denied the counterclaims at trial because Nationwide pointed to no evidence that the banks were specifically motivated by the CFPB's press release to discontinue their relationships with Nationwide.

On appeal, Nationwide argues that the district court applied the wrong legal standard in holding that the CFPB did not violate Nationwide's due process rights. Pointing to various Ninth Circuit cases, Nationwide argues only a "connection" between wrongful government conduct and reputational harm is needed to show a due process violation under the governing "stigma-plus" test, rather than "causation." *See Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) ("[Under the stigma-plus test], a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of some more tangible interest such as employment, or the alteration of a right or status recognized by state law.") (collecting cases) (simplified). But Nationwide's arguments fail even under the more lenient "connection" standard it proposes, because the CFPB's press release was not wrongful conduct, nor did Nationwide introduce any evidence of a connection between the press release and the banks' terminations of their relationship with Nationwide.

Nationwide also argues that the district court abused its discretion in excluding a set of proffered exhibits and expert testimony. "A district court abuses its discretion when it applies the incorrect legal standard or if, . . . its 'application of

the correct legal standard was illogical, implausible, or without support . . . in the record.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1063 (9th Cir. 2022) (quoting *United States v. Liu*, 538 F.3d 1078, 1085 (9th Cir. 2008)). As to the exhibits—congressional letters, reports, news articles, and other documents about government efforts to restrict private-sector financial services offered to disfavored industries—the district court correctly ruled that they were inadmissible because they were irrelevant without evidence that a banking institution had relied on them to stop servicing Nationwide. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). And as to Nationwide's expert, who opined that Nationwide's banking partners terminated their relationships because of pressure from the CPFB, the district court did not abuse its discretion in excluding his testimony for lack of foundation. Expert testimony must be helpful to the trier of fact because of "the expert's scientific, technical, or other specialized knowledge," must be "based on sufficient facts or data," must be "the product of reliable principles and methods," and must "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. But the expert report here rested only on litigation documents and news reports, without any additional scholarly or technical sources and without any expert methodologies (such as surveys). The district court thus did not abuse its discretion in excluding Nationwide's expert.

AFFIRMED.

9                                                          24-5940