Morris Eder, J.
A general contractor has sued the surety of a subcontractor on a performance bond. It is not denied that the latter failed to deliver the ordered steel and pipe railing when required by plaintiff — at a time when due to a strike in the industry and other conditions such steel was relatively scarce and high in price — but it is urged by defendant that it was plaintiff, and not its principal, who was responsible for the failure to carry out the terms of the contract. Plaintiff has moved for summary judgment, contending that, there are no triable issues in view of the terms of the written contract and correspondence between the parties and the undisputed fact that defendant’s principal refused to make delivery unless a *476 higher-than-contract price was paid. Plaintiff had the job done by another firm and is suing for the difference in cost.
Since the parties are not in agreement as to the terms of their contract, that issue must first be settled. The subcontractor submitted a written bid dated October 7, 1954. Plaintiff then prepared and signed its “ Purchase Order ” dated October 8, 1954 which the subcontractor signed and returned on October 13. ' There were several changes and additions made by plaintiff in its purchase order from the terms set forth in the bid, such as the furnishing of a performance and payment bond and a most significant change as to the date for delivery. In these circumstances it is clear that the terms as stated in the ‘ ‘ Purchase Order ” control, since it represents a counteroffer accepted by the offeror. The performance bond itself referred to the contract as having been entered into by the principal on the 8th day of October, 1954, and not, as defendant now maintains, on October 7, the date of the bid. Whatever the obligations arising from the October 8 purchase order, these are the obligations which defendant undertook would be performed by its principal and which the law must enforce.
The written bid had specified that fabrication of the steel railings was “ to start in approximately 6 months.” However, the actual order signed omitted any reference to time and simply provided that the “ date for delivery or starting work ” was “when and as required.” It is the subcontractor’s contention that no material conforming to the needed specifications could be ordered from the mills until plaintiff furnished it with shop-drawings and that such drawings were not furnished until more than one year after the contract, at which late date plaintiff “required” prompt delivery of the goods originally ordered. Neither the bid nor the purchase order made provision for a date when the subcontractor was to be furnished such drawings, both merely stating that the contractor would furnish them.
The only possible conclusion is that the subcontractor gambled on his being able to acquire and supply at a profit the material “when and as required” by the contractor, presumably as needed by it in the general progress of the construction job. He made no attempt to protect himself by setting a time limit for the submission of the drawings or against a rise in the price of steel during the period necessarily intervening before plaintiff might require delivery.
The courts cannot make contracts for parties but are limited to carrying out those which they themselves have voluntarily made, however improvident they turn out to be. There being no showing of bad faith with regard to the time when plaintiff *477 “ required ” delivery, no reason exists for refusing to hold the subcontractor to his bargain.
The motion is accordingly granted but, since the ascertainment of plaintiff’s damages requires the presentation of proof, an assessment for that purpose is directed.
Settle order.