Fred J. Munder, J.
This action is brought to recover money paid on account by the plaintiffs toward the purchase of certain real property, and for judgment enforcing a vendees’ lien in connection therewith as permitted under section 112-h of the Civil Practice Act. The defendant in its answer denies the material allegations of the complaint and counterclaims for specific performance, or, in the alternative, for retention of the deposit as liquidated damages as provided by paragraph 22 of the contract.
A review of the testimony, though often contradictory, reveals the facts to be essentially as follows.
The parties hereto, on September 25,1957, entered into a contract whereby the plaintiffs agreed to purchase a lot and a house to be erected thereon similar to a model house located at Deer Park in the Town of Babylon. The contract was conditioned upon the purchasers’ obtaining an F. H. A. insured mortgage, and specified the closing date to be “ on or about May 1, 1958 ’ ’. In addition the contract provided in paragraph 18 thereof that: “ If final action on the mortgage applications shall not have been taken, final inspection or other necessary instruments or reports issued by the agency insuring the mortgage loan, or if the building shall not be ready for occupancy at the date hereinafter set forth for the closing of title, then said title closing shall be adjourned to a date to be set by the Seller which date shall not be beyond one month after said dwelling shall be ready for occupancy and all necessary reports, approvals and instruments shall have been issued ”.
*558 The sum of $1,025 was paid on account of the purchase price. The following week the plaintiffs were advised by a Mr. La Manna, president of the defendant corporation, that, because of certain requested changes from the model, he was not certain when he could obtain F. H. A. approval of the plans so that construction could be commenced. Construction was finally begun in February of 1958 when approval had been obtained. Early the following month a further discussion was had with respect to another previously requested change from oil to gas-fired heat. It was then explained to the plaintiffs that the new heating system would require further F. H. A. approval, but they were assured they would, in all probability, be able to take title in May. This approval was finally obtained by letter of May 15 addressed to the lending institution, and it appears that the building was substantially completed by the early part of June. The defendant then made application to the Federal Housing Administration for a final compliance report.
No inspector was sent until the middle of July, at which time certain defects were noted. These were corrected forthwith and a new inspection was ordered. The new inspection was made and the house was finally approved the third week in August subject to the builder obtaining a certificate of approval from the Suffolk County Board of Health. Application was thereupon made, but 10 days later the defendant was informed by the board that by resolution adopted August 20,1958, its requirements had been changed, thus making it impossible to issue the requested certificate, though the system had previously been approved at the time of its installation.
The builder thereupon petitioned the Supreme Court for an order directing the board to issue a certificate. By decision dated September 26, 1958, this application was denied on the ground that, there being no provision of law that imposed a duty on the board to issue a certificate in such a situation, the court had no power to direct its issuance. The builder then proceeded to construct a new well to conform to the new requirements and obtained the requisite approval by October 15.
During the entire course of construction and the subsequent negotiations the plaintiffs made frequent visits to the building site. On each and every occasion they demanded when they could expect a delivery of title, but the builder was never in a position to know. It appears, however, that no specific date was ever demanded by the plaintiffs until they learned of the defendant’s inability to obtain approval of the well. Upon the builder’s refusal to either fix a date or cancel the contract the *559 plaintiffs retained an attorney who was advised of the petition before the court.
On October 1 a formal demand was made by the plaintiffs’ attorney stating that they had elected to declare the contract at an end unless title could be actually closed on or before October 10,1958. In answer to this demand they were informed by letter of defendant’s attorney that closing could not take place until the new well was completed, and a final closing date of November 10 was suggested. By letter of October 8 this offer was refused, and proceedings to foreclose the alleged vendees’ lien were immediately commenced. As previously indicated the new well was subsequently completed and final approval obtained by October 15, and one week later the defendant was ready to close title. The plaintiffs having already elected to declare the contract void, the closing was never held.
Time cannot be considered as of the essence in this contract. The mere designation of a date upon which a thing is to be performed does not alone bring about any such result. (Ballen v. Potter, 251 N. Y. 224.) Even if it were so intended, the plaintiffs by their acquiescence in the series of delays and by their continued insistence on performance waived default, if any, on the builder’s part. (See Bowan v. Horgan, 259 N. Y. 267.) By their own testimony these plaintiffs were ready, willing and able to close title at any time between May 1 and October 10, 1958. Furthermore, the inclusion in the contract of paragraph 18, as hereinbefore set foith, though not intended to protect the builder indefinitely, indicates that the parties must have contemplated the very delays that were occasioned by the failure to obtain the various approvals, inspections and reports necessary to secure the mortgage loan.
When performance within a limited time has been waived, before one party can be put in default so as to authorize the other to put an end to the contract, it is incumbent on the latter to demand performance upon the former’s part and again restore time as an element in the contract. (Lawson v. Hogan, 93 N. Y. 39.) “ One claiming that element to be essential is bound, before he can support such a claim, to serve a clear, distinct, and unequivocal notice fixing a reasonable time within which the thing must be done. ’ ’ (Ballen v. Potter, supra, p. 229.)
In the instant case the first “ clear, distinct, and unequivocal notice ” was given by the plaintiffs in September when they discovered approval of the water system had been denied. That notice was clearly unreasonable as the defendant had then to await the outcome of its court action. In any event it was *560 waived by the fixing of a subsequent date. With knowledge that the decision was adverse and that the builder had yet to construct a conforming well, the plaintiffs, through their attorney, submitted a final demand on October 1 for the 10th as a closing date. This plainly did not fix a “ reasonable time ’ ’ within which to install the well.
Though the law presumes that the parties to the original contract intended performance within a reasonable time of its making, it does not follow that one party may suddenly, and in the absence of reasonable notice, terminate the contract while the other is endeavoring in good faith to perform it. (Taylor v. Goelet, 142 App. Div. 467.)
Regrettable as it may be in this instance that the plaintiffs were subjected to such seemingly interminable delays, there being no showing of bad faith on the part of the builder, they must be held to have forfeited their right to rescind. “ The courts cannot make contracts for parties but are limited to carrying out those which they themselves have voluntarily made, however improvident they turn out to be”. (Terry Contr. v. Commercial Ins. Co. of Newark, 16 Misc 2d 475, 476.)
The complaint is therefore dismissed, and judgment is directed in favor of the defendant to the extent that it may retain the deposit as liquidated damages.
This shall constitute the decision of this court in accordance with section 440 of the Civil Practice Act.
Submit judgment accordingly.