506 P.2d 659

**George W. MILLER and Johanna Miller, his wife, Appellants,**

**v.**

**Mary E. CROUSE, a single woman, Appellee.**

**No. 1 CA-CIV 1991.**

Court of Appeals of Arizona, Division 1.

Feb. 27, 1973.

Rehearing Denied April 5, 1973.

Review Denied May 1, 1973.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellants.

Minne & Sorenson, by Raymond Huffsteter, George Sorenson, Phoenix, for appellee.

KRUCKER, Judge.

Appellants, defendants below, seek reversal of a judgment in favor of appellee, plaintiff below. (Parties shall hereinafter be referred to as plaintiff and defendants.)

Plaintiff filed suit seeking rescission of a contract between herself and defendants wherein she agreed to purchase and defendants agreed to sell a business known as "The Round-Up", a tavern located in

the City of Phoenix. Her complaint alleged that she had performed all that was required of her and that defendants had failed to perform all that was required of them, in particular, had failed to obtain a proper assignment of the lease from the owners of the real property upon which the business was conducted. She further alleged that because of defendants' failure to comply, she "has elected to rescind and terminate said agreement." Defendants' answer alleged that they had fully performed the terms of the contract. They also filed a counterclaim likewise alleging full performance on their part and that plaintiff had refused to comply with the provisions of the contract and had given notice to the escrow agent not to close the sale and not to deliver to the defendants the money deposited with said escrow agent. Defendants' prayer for relief requested specific performance and damages. The trial court resolved the controversy in favor of the plaintiff and entered judgment against defendants for $5,000, the sum paid by plaintiff to the escrow agent.

A pre-trial statement executed by the attorneys of the respective parties stipulated that the following facts were uncontested. On September 27, 1970, the parties entered into a purchase contract and receipt agreement and on September 29, 1970, they entered into a management contract and appointed attorney Craig as escrow agent and bulk sales agent.[1] Plaintiff immediately took possession of the tavern, the bulk sales notice was given, and a No. 7 liquor license was issued in plaintiff's name on December 17, 1970.

On January 4, 1971, defendants executed the bill of sale and a lease assignment, and plaintiff signed an assumption of notice and security interest agreement. On the same day these documents were given to the escrow agent to hold until the closing of escrow.[2]

On January 28, 1971, plaintiff's attorney wrote to the escrow agent inquiring about the status of the escrow and by letter dated February 1, 1971, the escrow agent responded. In this letter the agent indicated that he was still awaiting return of a consent to assignment of lease by the landlord. He indicated that the document had been forwarded to the landlord the day after the other documents had been executed by the parties. On February 1, 1971, defendants and their attorney, plaintiff and her attorney, the landlord and his wife, and the escrow agent met in the latter's office for the purpose of closing the escrow. Also present were Mr. and Mrs. Koch, holders of a chattel mortgage. At the meeting the landlord presented the following document:

"In consideration of assigning this lease to Mary Crouse, we submit the following conditions to be met by all parties.

1. The first and last month of lease agreement are to be paid in advance.

2. In case of sale of the business the lease is terminated, and a new lease is to be agreed upon between the Guscotts [landlord] and the new buyer. Terms of monthly rental to be $350.00 per month."

After some discussion with regard to these conditions, plaintiff and her attorney left the meeting, after which the landlord did in fact sign the consent to the assignment of the lease.[3]

---

1. They agreed that copies of the September 27 and September 29 documents be admitted into evidence without objection.

2. The parties agreed that copies of these documents could be admitted into evidence without objection.

3. The pre-trial statement contains a parenthetical statement:
"(This fact is neither admitted nor denied by the Plaintiff, and a copy of the consent will be offered in evidence but will be objected to by the Plaintiff on the grounds that at the time of the signing of said consent the Defendant had already failed to obtain it as required by the terms of the contract and that said contract had been cancelled prior to the time when said consent was signed.)"

On February 2, 1971, a letter signed by plaintiff and her attorney was sent to defendants which stated that because of defendants' failure to comply with the terms of the September 27 agreement, and in particular their failure to cause the lease to be assigned to plaintiff, the letter was to serve as notice of cancellation and termination of the agreement. The letter demanded return of the $5,000 being held by the escrow agent and the further sum of $2,500 as damages and stated:

". . . we herewith tender to you an application in blank duly signed for the retransfer of the Series 7 liquor license to you, together with the keys to said business."

A copy of the foregoing letter was also delivered to defendants' attorney. He immediately wrote to plaintiff's attorney acknowledging receipt of the letter and stated that plaintiff had been advised the night before that consent to assignment of the lease had been executed by the landlord and therefore her attempted termination of her agreement to purchase the tavern was ineffective; that furthermore, all necessary documents to close the sale were in the hands of the escrow agent and ready for delivery to plaintiff. On February 3, 1971, the escrow agent wrote a letter to plaintiff's attorney advising him that the landlord had executed the consent to assignment approximately ten minutes after he and plaintiff had left the February 1 meeting. He also stated that it was his position that the transaction was consummated on February 1 and therefore the February 2 letter had no legal efficacy.

After sending the February 2 letter, plaintiff removed property belonging to her from the tavern and refused to do anything further to comply with the terms of the September 27, 1970 agreement, it being her position that the agreement had been cancelled. The defendants repossessed the premises after plaintiff left, and on March 15, 1971, entered into a settlement and release with the landlord.

The pre-trial statement recited that there were certain contested factual and legal issues to be determined by the court:

1. The facts with regard to what went on at the February 1, 1971 meeting;

2. Whether or not the September 27, 1970 agreement was cancelled and terminated by plaintiff or her attorney at the February 1 meeting;

3. Whether defendants complied with their obligations under the September 27 agreement to obtain a lease assignment;

4. Whether the plaintiff or defendants were entitled to recover and, if so, the amount of such recovery; and

5. Whether there was a cancellation or breach of the September 27 agreement by either plaintiff or defendants.

The September 27 agreement executed by plaintiff and defendants acknowledged receipt from plaintiff of the sum of $1,000 as earnest money and part purchase price of "The Round-Up Tavern." The full purchase price was $18,500 and the sale was to be completed on transfer of the Number 7 beer and wine license. An additional $4,000 earnest money was to be placed in escrow when the application for transfer was made and the balance of the purchase price was payable by assumption of two existing mortgages and approximately an additional $107.00. The parties further agreed, *inter alia*,

*    *    *    *    *    *

"5. That any existing lease upon above-described premises shall be assigned to and assumed by the Purchasers herein; it being expressly agreed by the parties hereto that the Sellers shall obtain the consent of the landlord in said lease to said assignment.

*    *    *    *    *    *

"11. That if said Buyer shall fail to comply with any of the terms hereof, the Seller at his option may demand specific performance of this Contract, or may re-

tain the amount paid herein as liquidated damages.

12. That time is the essence of this contract."

The case was tried to the court, sitting without a jury, and extensive testimony was presented as to the events leading up to the February 1 meeting and as to what transpired at the meeting itself. Although the September 27 agreement recited· that the sale was to be completed when the liquor license was transferred, the plaintiff was unable to attend a meeting scheduled for December 18, the day after the license was transferred. Consequently, plaintiff and defendants did not execute the documents required of each of them until January 4, 1971. According to the escrow agent, at the conclusion of the January 4 meeting it was decided that he would do everything possible to get the landlord's signature on the consent to assignment of the lease. He spoke with him on the telephone and was told that he was out of town and would try to do something in regard to signing when he returned. He responded to questioning by plaintiff's counsel:

"Q. And thereafter the only thing that held everything up right through February 2nd was the failure of the Guscotts to sign?

A. No sir, not totally.

Q. What else?

A. Well, Miss Crouse was calling me, indicating she did not necessarily like the operation, didn't want to go through with the deal, and so forth. Miss Crouse's mother was calling me daily in respect to it, saying she should never havè entered into it, because she was not equipped and able to buy the place.

There was an indication on both Miss Crouse and Miss Crouse's mother of what I term in handling these transactions as buyer's remorse.

Q. Anything from the Millers?

A. No. The Millers seemed to be satisfied with the transaction. They felt like they probably should have received more money and they would like to have their money as soon as they could."

Plaintiff took the position that she had terminated the agreement when she and her attorney left the February 1 meeting. The trial court apparently agreed, as reflected by the following recitation in its minute entry order for judgment in favor of the plaintiff:

"It is the feeling of the Court that the intent of all the parties concerned with the transfer of ownership of the subject bar was that all of the obligations of each of the parties to the contract were to be fulfilled at the meeting of February 1, 1971.

It is the further feeling of the Court that when the defendants did not fulfill the contractural (sic) obligations incumbent upon them before the meeting recessed, they had breached the contract and the plaintiff was no longer bound thereby, nor obligated to perform under the contract."

Our review of the record convinces us that the evidence does not support the trial court's conclusion. Initially, we note that no showing was made that the landlord's consent in writing to an assignment of the lease was in fact required by the terms of the lease. It is true that a failure of consideration of an essential part of a contract will justify rescission. Mortensen v. Berzell Investment Company, 102 Ariz. 348, 429 P.2d 945 (1967). Assuming arguendo that failure to obtain the landlord's written consent to the lease assignment would justify rescission, if plaintiff so elected, we do not believe plaintiff was entitled to prevail.

The September 27 contract did specify that time was of the essence. It further specified that the time for closing was to coincide with transfer of the liquor license to the plaintiff, an event which occurred on December 17. The plaintiff,

however, had waived timely performance and therefore could place the defendants in default only by giving them notice that unless they performed on a fixed date, giving them reasonable time and the .opportunity to comply, the contract would be terminated. Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Company, 102 Ariz. 301, 428 P.2d 678 (1967); Lamont v. Ball, 93 Cal.App.2d 291, 209 P.2d 9 (1949).

■ The record reflects that after the January 4 meeting, the parties contemplated that the landlord's written consent would be obtained within a reasonable time. Under such circumstances, one party may not suddenly, in the absence of reasonable notice, terminate the contract while the other party is endeavoring in good faith to perform it. Schneider v. Rola Construction Co., Inc., 16 Misc.2d 556, 183 N.Y.S.2d 955 (1959); 17 Am.Jur.2d Contracts § 508 (1964); 17A C.J.S. Contracts § 422(1) (1963). There is no evidence whatsoever that plaintiff advised defendants that unless the required consent was obtained by a certain date she would terminate.

■ We have closely scrutinized the testimony of the various witnesses concerning what transpired at the February 1 meeting.[4] A notice of rescission must be clear and unambiguous, conveying the unquestionable purpose to terminate the contract and where, as here, the conduct of one having a right to rescind is not clear as to whether he has, he will be deemed not to have done so. Mahurin v. Schmeck, 95 Ariz. 333, 390 P.2d 576 (1964); 17 Am.Jur.2d Contracts § 509 (1964). Although such notice is not required to be formal and may be evidenced by conduct, manifestation of an intent to rescind must be unequivocal. Neither the words nor the conduct of plaintiff and/or her attorney at the meeting or on departure conveyed an unquestionable purpose to terminate the contract. Within a few minutes after they left the meeting the landlord signed the written consent to assignment of the lease. Shortly thereafter, the landlord, his wife, and the defendants went to the tavern and advised the plaintiff of this fact.

■■ Plaintiff testified that when she and her attorney left the meeting he told her that he was going to terminate and was going to write letters the next day to accomplish this. A notice of rescission,, however, is not effective as such until it is received and unless the party giving the notice is entitled to rescind. 17A C.J.S. Contracts § 435 (1963). Since the landlord had executed the required document on February 1, the defendants had performed all obligations required of them under the September 27 agreement and plaintiff's. purported notice of rescission was ineffective.

■ Under the circumstances presented here, the trial court erred in finding defendants had breached their contract—the record reflects the contrary, i.. e., the plaintiff defaulted. The defendants therefore were entitled to recover on their counterclaim. As noted above, the September 27 agreement provided alternative remedies to them: specific performance or retention as liquidated damages of "the amount paid herein". Since the remedy of specific performance is not available, defendants' sole remedy is recovery of damages for breach of contract. Where the contract itself provides for the amount of damages in the event of breach, the terms. of the contract control. Thermo-Kinetic

---

4. According to the plaintiff, her attorney told her, "We are through." She thought he said when they left the meeting, "We'll be going and you'll be hearing from us." According to her attorney, he did not recall saying anything as they left the meeting. He did testify, however, that he told the plaintiff that if she did not want to accept the landlord's conditions, "Well, we'll just terminate, cancel", and then left. The general consensus of the other parties was that plaintiff's attorney merely indicated during the meeting that they would not accept the landlord's terms, and although they were urged to stay a little longer as it appeared things would be worked out, they insisted on. leaving and the attorney suggested that they let him know what happened.

Corporation v. Allen, 16 Ariz.App. 341, 493 P.2d 508 (1972); Deuel v. McCollum, 1 Ariz.App. 188, 400 P.2d 859 (1965); 22 Am.Jur.2d Damages § 213 (1965). Consequently, defendants were entitled to keep the money paid into escrow by the plaintiff.

The judgment is reversed and the cause remanded with directions to enter an appropriate judgment in accordance herewith.

HATHAWAY, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.