706 F.2d 1033
 13 Fed. R. Evid. Serv. 557
 CITY OF PHOENIX, Plaintiff-Appellee,
v.
COM/SYSTEMS, INC., et al., Defendants-Appellants.
Richard H. BARRY, Counter-claimant/Appellant,
v.
CITY OF PHOENIX, Counter-defendant/Appellee.
OHIO CASUALTY INSURANCE COMPANY, Cross-claimant,
v.
Richard H. BARRY, et al., Cross-defendant.
 No. 81-5471.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 7, 1982.
Decided May 26, 1983.
 
 Don C. Stevens, II, William R. Jones, Jr., Jones, Skelton & Hochuli, Phoenix, Ariz., for plaintiff-appellee.
 Robert O. Dyer, Phoenix, Ariz., Michael J. Pearce, George E. Wise, Wise & Nelson, Long Beach, Cal., for defendants-appellants.
 Appeal from the United States District Court for the District of Arizona.
 Before ELY and CHOY, Circuit Judges, and THOMPSON,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 This diversity action arose out of a contract dispute between the City of Phoenix ("City") and a contractor who had agreed to build a communications system for the City. The contractor's performance bond surety company, which was joined as a defendant, cross-claimed for indemnity against the contractor. We find that (1) the district court acted properly in entering a judgment notwithstanding the verdict on the indemnity cross-claim rather than ordering a new trial; and (2) there is adequate evidence on the record to support the amount of damages awarded to the City by the jury. Therefore, we affirm the judgment entered by the district court.
 
 I. Background
 
 2
 On December 16, 1974, Richard H. Barry ("Barry"), the owner and manager of Com/Systems, entered into a contract with the City. The contract provided that Barry would build, design, and produce a "multi-channeled, multi-position, two-way radio communications remote control system" for the Phoenix Police Department at a price of $179,294. The contract called for Barry to obtain a contract performance surety bond in the amount of one-half the contract price. Accordingly, Ohio Casualty Insurance Company ("Ohio Casualty"), as surety, executed and delivered on behalf of Barry, as principal, a contract performance bond in the amount of $89,632, designating the City as obligee.
 
 
 3
 Because of a series of revisions requested by the City and other delays caused by problems within Barry's organization, the system remained incomplete in January 1976. On January 19, 1976, the City informed Barry that it considered the delay to be a material breach and was, therefore, cancelling the contract. At the time of cancellation, the City had paid Barry $134,264, leaving approximately $45,000 unpaid on the contract. The City then proceeded to work on the project in-house and finally completed the project in September 1979.
 
 II. The Trial
 
 4
 The City sued Barry and Ohio Casualty for the extra costs it incurred in completing the system, claiming that Barry had breached the contract by failing to meet the contract delivery schedule. Barry counterclaimed against the City, claiming that the City's unilateral cancellation of the contract constituted a breach. Ohio Casualty cross-claimed against Barry for indemnity for any amount it might have to pay the City on the performance bond.
 
 
 5
 At the trial before a jury, the City presented evidence that it had incurred a total expense of $337,617.26 in completing the communications system. The City's evidence also showed that of that total, $94,508.97 was used to purchase parts. Barry estimated the reasonable cost of completing the system and a City communications officer testified as to his belief concerning completion cost at the time the contract was terminated.
 
 
 6
 For reasons that are not completely clear, the trial judge instructed the jury that the total award of damages to the City could not exceed $119,000.[1] The judge correctly instructed the jury that if they found Ohio Casualty liable to the City, then by law, Barry would be liable to indemnify Ohio Casualty for any amount Ohio Casualty paid to the City on the security bond. However, the verdict forms received by the jury included a form that gave the jury the option of finding for the City and against both Barry and Ohio Casualty on the breach-of-contract claim, but for Barry and against Ohio Casualty on Ohio Casualty's cross-claim for indemnification.
 
 
 7
 The jury returned a verdict on the incorrect verdict form, finding for the City and against Barry and Ohio Casualty in the amount of $90,000, and against Ohio Casualty and for Barry on the indemnity crossclaim. Barry and Ohio Casualty moved for a new trial, or alternatively, for judgment notwithstanding the verdict. The district court entered judgment on the breach-of-contract claim according to the verdict, but entered a judgment notwithstanding the verdict on the indemnity cross-claim. Thus, the district court awarded the City of Phoenix $90,000 against Barry and Ohio Casualty on the breach-of-contract claim and held Barry liable to Ohio Casualty on the indemnity cross-claim.
 
 III. Judgment Notwithstanding the Verdict
 
 8
 By law, Barry was liable to indemnify Ohio Casualty for any amount Ohio Casualty paid to the City on the performance bond. The instructions read by the trial judge correctly informed the jury of the state of the law. Nevertheless, the verdict forms supplied to the jury gave them the option of deciding the indemnity cross-claim, and the jury exercised that option by returning a verdict for Barry and against Ohio Casualty. The trial judge corrected the error by entering a judgment notwithstanding the verdict on the cross-claim.
 
 
 9
 A judgment notwithstanding the verdict is proper where the evidence and inferences, viewed in the light most favorable to the nonmoving party, can support only one conclusion: that the moving party was legally entitled to a favorable judgment. Allen v. Allstate Insurance Co., 656 F.2d 487, 488 (9th Cir.1981); see Cordero v. CIA Mexicana de Aviacion, S.A., 681 F.2d 669, 672 (9th Cir.1982); Flores v. Pierce, 617 F.2d 1386, 1389 (9th Cir.), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980). Since Ohio Casualty was entitled to judgment on its cross-claim as a matter of law, the judge acted properly in issuing a judgment notwithstanding the verdict on the cross-claim.
 
 
 10
 Barry and Ohio Casualty contend that the judgment notwithstanding the verdict was inadequate to correct the jury's error and that the proper way to correct the error would have been to grant a new trial on all issues. A trial judge may grant a new trial in order to prevent fundamental unfairness or a miscarriage of justice. Peacock v. Board of Regents, 597 F.2d 163, 165 (9th Cir.1979); cf. Alma v. Manufacturers Hanover Trust Co., 684 F.2d 622, 625 (9th Cir.1982) (nonjury trial). But the district court's conclusion that no such unfairness was present may be reversed only if this court has a definite conviction that the conclusion was a clear error of judgment. Ruiz v. Hamburg-American Line, 478 F.2d 29, 31 (9th Cir.1973); cf. Alma, 684 F.2d at 625.
 
 
 11
 After considering the circumstances of this case, we have no such conviction that the district court's decision to deny a new trial was erroneous. The breach-of-contract claim and the indemnity cross-claim rested on totally distinct factual and legal bases. The question of Barry's liability to indemnify Ohio Casualty was irrelevant to the outcome on the breach-of-contract question. Having seen all the evidence and heard all the testimony, the district court judge was in the best position to ascertain that the jury's decision on the breach-of-contract issue was supported by substantial evidence and was not tainted by the jury's erroneous decision on the indemnity issue.
 
 
 12
 Since the two issues were distinct and separable, no injustice occurred when the district court entered a judgment in accord with one part of the jury's liability verdict but entered a judgment notwithstanding the indemnity portion of the verdict. Cf. Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931) (partial retrial allowable where it clearly appears that issue to be retried is distinct and separable from others); Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc., 513 F.2d 407, 420-21 (D.C.Cir.1975) (same). We therefore affirm the judgment entered by the district court with respect to the liability issues.
 
 
 13
 IV. Adequacy of Evidence Supporting Damages Award
 
 
 14
 Before deciding whether there was sufficient evidence to support the amount of damages awarded by the jury, we must first address two evidentiary questionsone explicitly raised by Barry and Ohio Casualty and the other implied in their arguments.[2]
 
 A. Objection to Testimony by Simmons
 
 15
 John E. Simmons, a City communications officer, testified that the City had expended $337,617.26 in completing the communications system. The trial court allowed the testimony over the objection of the defendants that the proper foundation had not been laid. Although the judge did not specify the reason for his ruling, the questions he asked lead us to infer that he found the testimony admissible as a summary calculation of voluminous writings under Fed.R.Evid. 1006.[3] However, it is not critical that we know the trial judge's rationale; we will uphold the ruling if we find that there is at least one theory under which the evidence was admissible. See SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); Clark v. City of Los Angeles, 650 F.2d 1033, 1036 (9th Cir.1981), cert. denied, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982).
 
 
 16
 Simmons read the $337,617.26 total from Exhibit 87, a computer printout summarizing numerous individual documents. The underlying documents were parts requisitions and work-order requests detailing the cost of parts and labor the City expended in completing the communications system. Although the underlying documents were not offered as evidence at the time of Simmons' testimony, we believe that a foundation was laid for their admissibility as records kept in the ordinary course of business.
 
 
 17
 For a record to be admissible as a business record, it must be: "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge." Clark v. City of Los Angeles, 650 F.2d at 1036-37 (summarizing Fed.R.Evid. 803(6)). Prior to reading from the summary, Mr. Simmons explained how the underlying documents were generated. He explained that any City employee doing mechanical, repair, or construction work would fill out a work order showing the project number of the project on which he was working and the amount of time he spent on the project. Similarly, if the employee used any parts to do his work, he would fill out a parts requisition, listing the project number and parts and equipment purchased. The City's mechanical, repair, and construction work is a regularly conducted business activity. Since a document was produced each time an employee worked on a project or ordered parts or equipment, the documents were kept in the regular course of business, and it was a regular practice to keep such documents. The documents were prepared by an employee who had knowledge of the actual time expended or parts purchased. Thus, a proper foundation was laid for the admission of the underlying documents under Fed.R.Evid. 803(6).
 
 
 18
 Because the work orders and parts requisitions were so numerous, the City produced the computer printout to summarize their contents. The trial judge had ascertained that the underlying documents were available for inspection by the defendants. Therefore, the summary was admissible under Fed.R.Evid. 1006. See United States v. Johnson, 594 F.2d 1253, 1254-57 (9th Cir.) (summary admissible only if underlying documents admissible, voluminous, and available for inspection), cert. denied, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979). The trial judge acted correctly in allowing Simmons to read from the summary.
 
 B. Testimony of Gross
 
 19
 In addition to the testimony by Mr. Simmons, the City presented the testimony of Gary Gross, the City Controller, concerning the costs the City incurred in completing the system. Gross also read to the jury from Exhibit 87, the summary of parts and labor costs. The two numbers Gross read to the jury were $94,508.97 (the total amount the City expended for parts) and $337,617.26 (the total amount the City expended for parts and labor). There was never any objection to Mr. Gross' reading these numbers to the jury, but counsel for Barry did object when, after Mr. Gross had read the numbers to the jury, the City moved to have Exhibit 87 and the underlying documents admitted into evidence. The trial judge sustained the objection, but because part of the discussion concerning this objection was held off the record, we do not know the trial judge's rationale for not admitting the documents into evidence.
 
 
 20
 Barry and Ohio Casualty seem to assume that Mr. Gross' testimony concerning costs incurred by the City is not in the record.[4] However, as we have previously noted, Barry and Ohio Casualty never objected to Mr. Gross' reading the numbers to the jury; they merely objected to the motion to move the summary and its underlying documents into evidence. Nor was there any motion to strike Mr. Gross' testimony after the summary documents were declared inadmissible. Therefore, Barry and Ohio Casualty never argued in the district court that if the document from which Gross read was inadmissible, then the jury should not have been allowed to consider the numbers that Mr. Gross read from that document.
 
 
 21
 This court will not review an issue not raised or objected to below unless necessary to prevent manifest injustice, In re Southland Supply, Inc., 657 F.2d 1076, 1079 (9th Cir.1981), or unless the issue not objected to in the district court is one of law and does not affect or rely upon the factual record, Telco Leasing, Inc. v. Transwestern Title Co., 630 F.2d 691, 693 (9th Cir.1980); United States v. Patrin, 575 F.2d 708, 712 (9th Cir.1978).
 
 
 22
 The evidentiary question raised by Mr. Gross' testimony is one that would affect the factual record, so the second exception to the general rule of nonreview does not apply. In addition, we believe that the first exception is inapplicable, for no manifest injustice occurred by allowing Mr. Gross' testimony to remain on the record even though the district court sustained the objection to move the document underlying that testimony into evidence. As we have already determined, Mr. Simmons' testimony established a foundation sufficient to support admission of Exhibit 87 as a summary of admissible business records. Even though the document itself was never admitted into evidence, we believe that it was admissible. Therefore, allowing the jury to consider numbers read from that document did not constitute manifest injustice. We consider the numbers read to the jury by Mr. Gross to be evidence upon which the jury could have properly based its verdict.
 
 C. Adequacy of Evidence
 
 23
 The jury had before it evidence that the City had purchased $94,508.97 worth of parts and expended a total of $337,617.26 for both parts and labor in order to complete the system. Other evidence relevant to the question of damages took the form of the estimates by Simmons and defendant Barry. Barry testified that he could have completed the system for an additional $11,000 and that, in his opinion, another vendor could have completed the system for between $50,000 and $75,000. Simmons testified that at the time the contract was terminated, he believed the City could complete the project for approximately $80,000. The trial judge, acting to implement the remedy for breach provided in the contract, put a ceiling of $119,000 on the damages award.
 
 
 24
 This court's standard of review with respect to the sufficiency of the evidence to sustain a damage award is narrow. Kotz v. Bache Halsey Stuart, Inc., 685 F.2d 1204, 1208 (9th Cir.1982). We will disturb a damage award only when it is clear that the evidence does not support it. Flores v. Pierce, 617 F.2d 1386, 1392 (9th Cir.), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980); see Mitsui O.S.K. Lines, K.K. v. Horton & Horton, Inc., 480 F.2d 1104, 1106 (5th Cir.1973). Since the damages awarded by the jury were well within the range of the evidence presented to the jury, we uphold the award.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 While none of the parties questioned the $119,000 ceiling on damages at the time of trial, all are now at a loss to explain exactly how this number was derived. The district court judge arrived at the number by relying on his interpretation of paragraph 11 of the contract:
 In case of default by the Vendor, the City shall have the right to cancel and to repurchase from another source, and may recover the excess costs by deduction from an unpaid balance due the Vendor, collection against the bid and/or performance bond, or a combination of the aforementioned remedies.
 
 
 [2]
 In addition to the evidentiary questions, appellants presented to this court an argument that the City was estopped from obtaining any damages from Barry by the language of paragraph 11 of the contract between Barry and the City (quoted at n. 1, supra )
 They cite several Arizona cases for the proposition that if a contract provides a remedy in event of a breach, that remedy is exclusive. See, e.g., Motorola, Inc. v. Fairchild Camera & Instrument Corp., 366 F.Supp. 1173, 1179 (D.Ariz.1973); Green v. Snodgrass, 79 Ariz. 319, 289 P.2d 191, 192-93 (1955); Treadway v. Western Cotton Oil & Ginning Co., 40 Ariz. 125, 10 P.2d 371, 374-75 (1932); Armstrong v. Irwin, 26 Ariz. 1, 221 P. 222, 225 (1923); Miller v. Crouse, 19 Ariz.App. 268, 506 P.2d 659, 664 (1973); Camelback Land & Investment Co. v. Phoenix Entertainment Corp., 2 Ariz.App. 250, 407 P.2d 791 (1965). Appellants argue that the contract provided only one remedy in case of default: "[T]he City shall have the right to cancel and to repurchase from another source and may recover the excess costs ...." Since the City completed the system itself, rather than "repurchase from another source," appellants contend the City is estopped from seeking to recover its costs.
 We do not so narrowly read the "repurchase from another source" language as to exclude the possibility of in-house completion and to require repurchase from another outside source. Rather, we read the language of paragraph 11 of the contract to limit the amount of damages the City could recover in the event that the City had to seek completion of the communications system by a source other than Barry. The district court limited the amount of damages to the amount provided in the contract. See n. 1, supra. We therefore find that the remedy sought by the City in the present case conforms with the remedy set forth in paragraph 11 of the contract.
 However, we note that even if the contractual remedy could be construed so narrowly as to allow reimbursement only for outside purchases, the damages awarded in this case conform to that narrow construction. The City purchased $94,508.97 worth of parts from outside sources and was awarded $90,000 in damages.
 
 
 [3]
 Before ruling on the objection to Mr. Simmons' testimony, the trial judge engaged in the following colloquy with witness Simmons and with Mr. Stevens, the attorney for the City:
 THE COURT: You say the underlying documents are present?
 MR. STEVENS: Yes, sir.
 THE COURT: Did you have anything to do with the preparation or supervision of the preparation of that document?
 THE WITNESS: Not myself, no.
 THE COURT: This is a summary of the other documents?
 THE WITNESS: Yes, sir.
 THE COURT: He may testify.
 
 
 [4]
 Appellant Ohio Casualty states in its brief: "The only evidence of damages presented at trial was the testimony of John E. Simmons ... that the City's costs of completing the system in-house totalled $337,617.26."