NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MTR BUILDERS, INC., an Arizona corporation,
*Plaintiff/Counterdefendant/Appellee/Cross-Appellant,*

*v.*

JAHAN REALTY MANAGEMENT CORPORATION,
*Defendant/Counterclaimant/Appellant/Cross-Appellee.*

No. 1 CA-CV 14-0650
FILED 4-12-2016

Appeal from the Superior Court in Maricopa County
No. CV2011-007463
The Honorable Maria Del Mar Verdin, Judge, *Retired*
The Honorable James T. Blomo, Judge

**AFFIRMED**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Denise H. Troy
*Counsel for Plaintiff/Counterdefendant/Appellee/Cross-Appellant*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik and Tyler Q. Swensen
*Counsel for Defendant/Counterclaimant/Appellant/Cross-Appellee*

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge John C. Gemmill and Judge Margaret H. Downie joined.

**G O U L D**, Judge:

¶1       MTR Builders Inc. ("Contractor") and Jahan Realty Management Corporation ("Owner") both appeal from a jury verdict declaring Owner breached the parties' contract and awarding Contractor $52,129.18 in damages. For the following reasons we affirm the verdict and rulings of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

¶2       In December 2009, Owner and Contractor entered a construction contract to build a shell building for retail space in Tempe. The construction contract contained a draw schedule of five progress payments outlining the amounts Owner would pay Contractor at predetermined stages of construction.[1] The project progressed and Contractor reached completion of the fifth and final phase of construction.

¶3       On June 1, 2011, Contractor emailed Owner with an invoice seeking payment of Draw 5 and requesting a final walkthrough. Owner responded via email on June 10 stating that a few outstanding matters needed to be resolved pursuant to the contract before scheduling a final walkthrough; Owner requested issuance of a Certificate of Occupancy by the City of Tempe and final written approval by the Owner's appointed third-party inspector.

¶4       Owner and its architect, who acted as the third-party inspector, walked through the building and created a punch list that was sent to Contractor on June 29, 2011. Contractor responded on July 12, stating (1) it had remedied all punch-list items for which it was contractually responsible, and (2) requesting Owner's inspector to re-inspect the property and issue final approval. However, the inspector

---

[1]       During the course of construction the parties signed an amendment to the contract extending the completion date and increasing payment to Contractor for various change orders.

declined to re-inspect the property unless at Owner's direction, explaining that he could not sign a certificate of substantial completion without a certificate of completion first being issued by Tempe.

¶5          On July 24, 2011, Contractor informed Owner that it needed a certificate of special inspection to be signed by Owner before Tempe would issue a certificate of completion.[2] In the communication, Contractor again requested payment for the work it had performed in the amount of $59,224.18.

¶6          The parties continued to disagree over some items required to complete the contract. Owner required Contractor to test and balance A/C units it installed. Contractor maintained that any outstanding items were warranty items that would be remedied after Owner paid the final payment in completion of the contract. Owner also requested Contractor to provide an unconditional lien waiver indemnifying Owner from any subcontractor claims.

¶7          At one point, Owner obtained a certified check in the amount Contractor was requesting for final payment, and the only outstanding issue appeared to be Contractor's lien waivers. Additionally, the record shows the City of Tempe did issue a certificate of completion, although both parties were unable to produce the document at trial, and Owner continued to demand that Contractor provide it.[3]

¶8          Ultimately, the parties' differences could not be resolved and communication between them broke down. Contractor then filed a complaint for breach of contract against Owner on August 3, 2011.

¶9          Contractor's complaint alleged Owner had breached its contract, Owner was unjustly enriched thereby, and Owner had violated the Prompt Pay Act in failing to pay Contractor's invoice. Owner replied

---

[2]     Although the contract refers to a certificate of occupancy, both parties agree that what was actually required was a certificate of completion. The building is a shell building that would not be occupied until tenant improvements were performed; therefore, completion of Contractor's work on the building would be marked by a certificate of completion.

[3]     We conclude that a certificate of completion was finally issued because Owner admitted it was able to occupy the property.

and filed a counterclaim alleging Contractor was the party who had breached.

¶10        Before trial, the parties filed cross-motions for summary judgment on Contractor's Prompt Pay Act claim.  Contractor argued it submitted an invoice requesting final payment pursuant to the Act on June 1, 2011, and Owner had failed to provide a written objection to the billing within the required time.  Owner responded that Contractor's request for final payment was premature.  Additionally, Owner claimed it did object to Contractor's requested billing in its June 10 email response and the punch list generated by its inspector on June 29.  Owner also sought dismissal of the unjust enrichment claim because a contract governed the parties' relationship.

¶11        The court granted summary judgment for Owner on both the Prompt Pay Act and the unjust enrichment claims.  The court concluded that Contractor's request for final payment was premature and that Owner had timely objected in its email and punch list.

¶12        Just before start of trial, Owner filed a motion for judgment as a matter of law.  Owner argued the contract contained conditions precedent to final payment that precluded Contractor from prevailing on its breach of contract claim.  Owner asserted that Contractor did not obtain the third-party inspector's final approval or the City of Tempe's certificate of completion before seeking final payment.  Thus, under *American Continental Life Insurance Co. v. Ranier Construction Co.*, 125 Ariz. 53 (1980), Owner concluded it was entitled to judgment as a matter of law.

¶13        The court denied Owner's motion and proceeded with the trial.  During trial, Contractor presented evidence that it had substantially performed its duties under the contract.  Further, Contractor showed that the City of Tempe eventually issued a certificate of completion, and Owner was able to occupy the premises.  Owner's expert testified that Contractor had grossly deviated from the contract and the cost of required repairs exceeded the amount of the final payment.  Contractor's rebuttal expert countered that many of the complained-of deficiencies were minor and incidental to any construction project.

¶14        Having found there was sufficient evidence to support both parties' breach of contract theories, the court instructed the jury on substantial performance and anticipatory breach.  The jury returned a verdict in favor of Contractor on its breach of contract claim and awarded

$52,129.18 in damages; the jury also entered a verdict denying Owner's breach of contract claim against Contractor.

¶15        The court entered judgment in accordance with the jury verdicts and awarded Contractor $105,000 in attorneys' fees. Owner renewed its Rule 50(b) motion, requesting the court direct a verdict in its favor pursuant to *Ranier*. The court denied Owner's motion.

¶16        Owner appealed the denial of its Rule 50(b) motions. Contractor cross-appealed the grant of summary judgment to Owner on the Prompt Pay Act claim.

**DISCUSSION**

I.        Summary Judgment Award

¶17        "We review an award of summary judgment *de novo*, both as to whether there are any genuine issues of material fact and as to whether the moving party is entitled to judgment as a matter of law." *Greenwood v. State*, 217 Ariz. 438, 442, ¶ 13 (App. 2008). "[W]e view the facts in a light most favorable to the party opposing the motion." *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (App. 1994). We will affirm if the trial court's ruling is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

¶18        The trial court granted Owner's motion for summary judgment on the Prompt Pay Act claim. It concluded that Contractor's request for payment was premature and that Owner timely objected to the request for payment. On cross-appeal, Contractor argues the trial court erred in granting summary judgment to Owner. Contractor contends Owner never issued a written statement within the terms of the act to notify Contractor it would not approve the billing.

¶19        Under the Prompt Pay Act an owner is required to make final payment to the contractor "within seven days after the billing or estimate for final payment is certified and approved." Arizona Revised Statutes ("A.R.S.") § 32-1129.01(A). The contractor shall submit its billing "[o]n final completion of the work." A.R.S. § 32-1129.01(K). The Act defines "final completion" to mean either (1) when the work "has been completed in accordance with the terms and conditions of the construction contract," or (2) the "date of final inspection and final written acceptance by the governmental body that issues the building permit." A.R.S. § 32-1129(A)(3).

¶20 The terms of the parties' contract provide that payment for Draw 5 would be made after the contractor finished "plumbing, electrical . . . and any other work to complete the Project and obtain the Certificate of Occupancy." The contract also states that draw payments would be disbursed subject to the satisfaction of a third-party inspector to be designated by Owner. The contract reiterates that "Draw 5 may be withheld pending final approval by the City of Tempe and the third-party inspector, which will then result in receiving the Certificate of Occupancy."

¶21 Thus, under both the contract and the Prompt Pay Act, Contractor could not submit a billing for Draw 5 before obtaining final approval of the third-party inspector and of the City of Tempe as evidenced by a Certificate of Completion. The record reflects that neither occurred before Contractor submitted its invoice seeking payment of Draw 5 on June 1, 2011.

¶22 At the time Contractor submitted its request for payment of Draw 5, the Owner's inspector had not performed a walkthrough and the City of Tempe had not issued a certificate of completion. Accordingly, under the Prompt Pay Act, Contractor's request for payment was premature; the trial court properly granted summary judgment to Owner on Contractor's Prompt Pay Act claim.

¶23 On appeal, Owner reasons the court's ruling denying Contractor's Prompt Pay Act claim is tantamount to a finding that Owner did not breach the contract. We disagree.

¶24 The primary purpose of the Prompt Pay Act is to establish a framework for ensuring timely payments from the owner to the contractor. *Stonecreek Bldg. Co. Inc., v. Shure*, 216 Ariz. 36, 39, ¶ 16 (App. 2007). The Act does not displace other contractual remedies available to the parties; rather, the Prompt Pay Act affords a remedy for enforcement of construction contracts in addition to any other breach of contract remedy available to a contractor. Thus, the court's grant of summary judgment against Contractor on its Prompt Pay Act claim did not prohibit Contractor from seeking damages for breach of contract.

II. Denial of Rule 50(b) Motion

¶25 We review the court's ruling on a motion for directed verdict de novo. *Dawson v. Withycombe*, 216 Ariz. 84, 95, ¶ 25 (App. 2007). In our review, "we view the evidence and all reasonable inferences drawn from the evidence in a light most favorable to the non-moving party, and will reverse a court's denial only upon a showing that there is no probative

evidence in the record to support the ultimate verdict." *Id.* "When the terms of a contract are plain and unambiguous, its interpretation is a question of law" subject to de novo review. *ELM Retirement Ctr., LP v. Callaway*, 226 Ariz. 287, 291, ¶ 15 (App. 2010); *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).

¶26        Owner relies on *Ranier*, to argue the trial court erred in denying its Rule 50(b) motion for directed verdict on Contractor's breach of contract claim. In *Ranier*, the court enforced a condition precedent to final payment in the construction contract and denied final payment to the contractor. 125 Ariz. at 54-55. The parties' contract expressly conditioned payment on issuance of a final certificate for payment by the architect. *Id.* at 55. Because the contractor did not obtain a final certificate for payment, the court found that the owner was entitled to a directed verdict on its breach of contract claim against the contractor. *Id.* at 56-57. Accordingly, the court reversed a jury verdict in the contractor's favor and directed the trial court to enter judgment in the owner's favor. *Id.* at 57.

¶27        The facts of this case and the facts of *Ranier* are similar. However, the holding in *Ranier* specifically relied upon the express, unambiguous contract language stating that payment was required "provided that . . . a final Certificate for Payment has been issued by the Architect." *Ranier*, 125 Ariz. at 55. Accordingly, *Ranier* only requires a directed verdict for Owner in this case if the subject contract expressly conditions payment on the alleged conditions precedent.

¶28        "As a general rule conditions precedent are not favored and the courts are not inclined to construe a contractual provision as a condition precedent unless such construction is plainly and unambiguously required by the language of the contract." *Watson Constr. Co. v. Reppel Steel & Supply Co.*, 123 Ariz. 138, 140 (App. 1979); *see also Valley Nat'l Bank of Ariz. v. Cotton Growers Hail Ins., Inc.*, 155 Ariz. 526, 528 (App. 1987). To create a condition precedent "there must be contractual language demonstrating the parties' unequivocal intent" to do so. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 182 (App. 1997). The language must demonstrate that payment is only required upon satisfaction of that condition, and that failure to satisfy the condition precludes any right to payment. *See Watson*, 123 Ariz. at 142. To determine what the parties intended, we "consider the plain meaning of the words in the context of the contract as a whole." *Figueroa*, 222 Ariz. at 593, ¶ 9.

¶29        Owner contends that final approval by its third-party inspector, issuance of a certificate of completion by the City of Tempe, and

signing of lien waivers on behalf of subcontractors are conditions precedent to the payment Contractor sought. Owner relies on a number of provisions of the contract in support of its condition-precedent argument. Section 2.3 states "[s]ubject to the inspector's satisfaction, each draw will be disbursed." Section 3.1 states "Owner will make payments to the contractor pursuant to the attached construction draw schedule as work required by said schedule is satisfactorily completed per the Inspector's satisfaction." Additionally, the contract states "Draw 5 may be withheld pending final approval by the City of Tempe and the third-party inspector." Finally, the contract amendment provides "future draw releases or payments will require a conditional lien waiver signed by all subcontractors and MTR."[4]

¶30　　　　　However, the contract contains other provisions under which Contractor can seek payment. In section 3.2 the contract expressly provides that in the event either party terminates the contract Owner remains obligated to pay Contractor for "that part of the work performed to the satisfaction of [the third-party] inspector." Section 12.1 provides that should either party fail to carry out the contract, "with all of its provisions," the non-defaulting party may proceed for breach of contract and seek its damages. Thus, the contract language, when viewed as a whole, is not a strict condition precedent contract. *Miller v. Crouse*, 19 Ariz. App. 268, 273-74 (1973) (stating that where the contract provides the remedy for breach or termination of contract, the terms of the contract control).

¶31　　　　　Contrary to Owner's assertions, Contractor's breach of contract claim is not simply a claim for payment of Draw 5, and therefore limited to section 3.1 of the contract. Rather, Contractor's claim reaches beyond payment of Draw 5 and seeks damages for breach of contract in the amount of $59,224.18. The claim is for Contractor's damages caused by Owner's breach of the contract pursuant to section 12.1 of the contract.

¶32　　　　　This distinction is significant. In the event that either party should default and fail to carry out its obligations under the contract, the non-defaulting party is given the option to sue for breach of contract. Thus, although there are conditions under section 3.1 that may preclude Contractor from demanding payment of Draw 5, in the event of a breach, sections 12.1 and 3.2 of the contract provide that Contractor is still entitled

---

[4]　　　Owner incorrectly asserts the contract required Contractor to provide unconditional lien waivers. The contract language clearly provides that conditional lien waivers be signed by subcontractors and by Contractor. Furthermore, the contract does not expressly condition payment of any draw on the lien waivers.

to seek damages for breach of contract. These contract provisions clearly govern the dispute between Owner and Contractor.

¶33        Thus, when viewed as a whole, the contract does not plainly and unambiguously create conditions precedent for Contractor to seek damages for breach of contract; accordingly, *Ranier* does not control. The court correctly denied Owner's Rule 50(b) motions. *See Gardner v. Royal Dev. Co.*, 11 Ariz. App. 447, 449 (1970) (stating that reviewing court will assume court made necessary findings to support its ruling).

III.      Trial Court's Jury Instructions

¶34        "In determining whether a jury instruction is justified, we must view the evidence in the strongest manner supporting the theory of the party requesting the instruction." *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 462 (App. 1986). The instruction should be given if there is "any evidence tending to establish" the theory, "even if contradictory facts are also presented." *Id.*

¶35        Owner argues the court erred in instructing the jurors they could find in favor of Contractor if they found Contractor had substantially performed the contract.[5] Owner also contends Contractor anticipatorily repudiated the contract when it prematurely sought final payment thereby freeing Owner of any obligation to further perform.

¶36        The court properly instructed the jury on both substantial performance and anticipatory breach. Evidence was presented at trial that could support either theory. *See Golonka v. General Motors Corp.*, 204 Ariz.

---

[5]        Owner also argues interpretation of the contract, a legal determination, was improperly sent to the jury. "When the terms of a contract are plain and unambiguous, its interpretation is a question of law for the court." *Callaway*, 226 Ariz. at 291, ¶ 15. However, if the court determines the "contract language is reasonably susceptible to more than one interpretation," "determination of the intent of contracting parties from extrinsic evidence may require fact finding." *In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005). Here, the court determined the contract was ambiguous as to the parties' intent to condition Contractor's right to payment on satisfaction of certain conditions. Having done so, it was proper to submit the issue to the jury.

575, 593, ¶ 64 (App. 2003).  "It is for the jury to find the facts and apply the instructions to the facts as they find them." *Pioneer Roofing*, 152 Ariz. at 462.

## CONCLUSION

**¶37**        The trial court properly dismissed Contractor's Prompt Pay Act claim on summary judgment and allowed Contractor's breach of contract claim to go to the jury.  We also affirm the jury's verdict in Contractor's favor and the trial court's award of attorneys' fees.

**¶38**        Both parties have requested their fees on appeal.  Owner requested fees under A.R.S. § 12-341.01.  Although Owner successfully defended Contractor's cross-appeal, Owner was unsuccessful on its appeal. Therefore, in our discretion we decline to award it fees.

**¶39**        Contractor requested fees both under A.R.S. § 12-341.01 and pursuant to the contract.  The parties' contract provides that a non-defaulting party may recover reasonable attorneys' fees resulting from the other party's breach.  Thus, upon compliance with ARCAP 21, Contractor is entitled to its reasonable fees incurred to pursue the appeal.  Because Contractor was unsuccessful on its cross-appeal, any fees incurred in pursuance of the cross-appeal should not be included in Contractor's request.



Ruth A. Willingham · Clerk of the Court
FILED: ama